STATE, Respondent, *v.* GUIE, Appellant.

(No. 4,397.)

(Submitted November 11, 1919. Decided November 22, 1919.)

[186 Pac. 329.]

*Criminal Law—Burglary—Confessions—Admissions—Admissibility—Trial—Practice—Order of Proof—Discretion.*

Criminal Law—"Involuntary Confession"—Definition.
　　1. An "involuntary confession" is one prompted by some inducement, generally of hope or fear, sufficient to move a reasonably prudent person, under the circumstances of the confessing party, to make the confession without regard to its truth or falsity.

Same—Confessions—When Inadmissible.
　　2. If the inducements held out to the confessing party are such that the prospects of bettering his situation by speaking even falsely

would appeal to him, as a reasonable person, as the better alternative to remaining silent, the resulting confession is inadmissible as evidence against him, because testimonially untrustworthy.

[As to the admissibility of confessions of accused persons, see notes in 46 Am. Rep. 243; 6 Am. St. Rep. 242, 245; 19 Am. St. Rep. 814; 73 Am. St. Rep. 943.]

Same—Confessions—Admissibility—Test.

3. *Held,* that a fair test to determine whether a confession is admissible in evidence is: Was the inducement held out to the confessing party such as that there is any fair risk of a false confession?

Same—Written Confession—Admissibility.

4. Where a prisoner in a penitentiary in another state wrote a note to the warden stating that he was wanted in Montana for robbery, was guilty of that crime, *etc.,* the officers of that institution not knowing that he was accused or suspected of its commission, and therefore not in position to hold out any inducements to him to make the statement, the note was properly admitted in evidence against him on his subsequent trial for that crime.

Same.

5. The note above referred to *held* admissible, for the further reason that when defendant was asked by the secretary of the warden, a few weeks after it was received, why he had written it, he replied that "it has been worrying me since I have been here, and I wanted it straightened. I have been thinking about it much."

Same—Confessions—Absence of Inducements—Circumstantial Evidence.

6. Absence of inducements sufficient to render a confession inadmissible may be proved by circumstantial evidence.

Same—Trial—Order of Proof—Discretion.

7. The order of proof in which a written confession and an oral one referring to the same matter made a few weeks later were admitted in evidence was a matter within the discretion of the trial court.

Same—"Confession"—Definition.

8. A confession, within the meaning of the criminal law, is a statement by a person, made at any time after the commission of a crime, that he committed or participated in it.

Same—"Admission"—Definition—Admissibility in Evidence.

9. An admission, as applied in criminal law, is a statement by accused, direct or implied, of facts pertinent to the issue, and tending, in connection with proof of other facts, to prove his guilt, but of itself insufficient to warrant a conviction; preliminary proof of its voluntary character being unnecessary to its admissibility.

*Appeals from District Court of Lewis and Clarke County; W. H. Poorman, Judge.*

ALPHONSE GUIE was convicted of the crime of burglary, and appeals from the judgment of conviction and from an order refusing him a new trial. Affirmed.

Cause submitted on briefs of counsel.

*Mr. A. H. McConnell,* for Appellant.

The following statements have been held to be inducements for making confessions: "Be better for him if he does." (*Commonwealth* v. *Curtis,* 97 Mass. 574, 578.) "If you are guilty you had better own it." (*State* v. *York,* 37 N. H. 175.) "It would be better for you, Harry, to tell the whole thing." (*State* v. *Wintzingerode,* 9 Or. 153.) "It would be better for him to make a full disclosure." (Uttered in the presence of the sheriff and his deputy.) (*People* v. *Barric,* 49 Cal. 342, 344.) "Jimmie, they are not going to let you out on such stuff as this." (*Collins* v. *Commonwealth,* 15 Ky. Law Rep. 691, 25 S. W. 743, 744.) "I don't think the truth would hurt anybody. It would be better for you to come out and tell all you know about it, if you feel that way." (*People* v. *Thompson,* 84 Cal. 598, 24 Pac. 384, 386.) "If he would tell all about it, it may be of interest to you and to me too." (*Searcy* v. *State,* 28 Tex. App. 513, 19 Am. St. Rep. 851, 13 S. W. 782.) "It will be better for you if you do." (*Redd* v. *State,* 69 Ala. 255.) "You had better tell all you know." (*Rex* v. *Kingston,* 4 Car. & P. 387.) "I should be obliged to you if you will tell us what you know about it. If you will not, of course we can do nothing." (*Rex* v. *Patridge,* 7 Car. & P. 551.) "As a general thing, it is better for a man who is guilty to plead guilty, for he gets the lighter sentence." (*Commonwealth* v. *Curtis,* 97 Mass. 574.) "You had better confess." (*Commonwealth* v. *Nott,* 135 Mass. 269; *People* v. *Phillips,* 42 N. Y. 200; *Flagg* v. *People,* 40 Mich. 706, 708.) "I told Underwood that I thought it would be better for him to go back and tell Captain Plummer all about it; that I thought he would withdraw it, or ease it as light as he possibly could." (*Territory* v. *Underwood,* 8 Mont. 131, 133, 19 Pac. 398.) In *Regina* v. *Jarvis,* L. R. 1 Ch. Cas. 96, the court said: "The words 'you had better tell the truth,' seem to have acquired a sort of technical meaning, importing a threat or benefit." For other cases holding this way see: *Bram* v. *United States,* 168 U. S. 532, 534, 42 L. Ed. 568, 18 Sup. Ct. Rep. 183 [see,

also, Rose's U. S. Notes] ; *Sorenson* v. *United States,* 143 Fed. 820, 74 C. C. A. 468; *Green* v. *State,* 88 Ga. 516, 30 Am. St. Rep. 167, 15 S. E. 10; *State* v. *Drake,* 113 N. C. 624, 18 S. E. 166; *Gallagher* v. *State* (Tex. Cr.), 24 S. W. 288; *Mitchell* v. *State* (Miss.), 24 South, 312; *Hardin* v. *State,* 66 Ark. 53, 48 S. W. 904.

"If a confession is obtained by such methods as to make it involuntary, all subsequent confessions while the accused is under the operation of the same influences are also involuntary, and when once a confession under improper influences is obtained, the presumption arises that a subsequent confession of the same crime flows from the same influences even though made to a different person from the one to whom the first was made." (1 R. C. L., p. 572, sec. 117; *Commonwealth* v. *Knapp,* 9 Pick. (Mass.) 496, 20 Am. Dec. 491; *Whitley* v. *State,* 78 Miss. 255, 53 L. R. A. 402, 28 South. 852; 18 L. R. A. (n. s.) 857, note; *State* v. *Guild,* 10 N. J. L. 163, 18 Am. Dec. 404; *State* v. *Wood,* 122 La. 1014, 20 L. R. A. (n. s.) 392, 48 South. 438; *Andrews* v. *People,* 33 Colo. 193, 108 Am. St. Rep. 76, 79 Pac. 1031; *Bullock* v. *State,* 65 N. J. L. 557, 86 Am. St. Rep. 668, 47 Atl. 62; *McNish* v. *State,* 45 Fla. 83, 110 Am. St. Rep. 65, and note, 34 South. 219.)

*Mr. S. C. Ford,* Attorney General, and *Mr. Frank Woody* and *Mr. Carl E. Cameron,* Assistant Attorneys General, for the State.

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

The defendant was convicted of the crime of burglary and has appealed from the judgment and from an order denying his motion for a new trial.

On December 5, 1917, the defendant, while serving a term in the Washington state penitentiary under the name of Alfred Gouen, wrote to the warden the following note:

"December 5th, 1917.

"Mr. Henry Drum:

"I have served over six months over my minumum, and would like to have you take my case up before the board for extradition to Montana, I am wanted there for robbery. I am wanted in Helena, Mont., for robbing the Northern Pacific depot of $600. I have nothing to say about this but to plead guilty. I am guilty of both crimes, for I don't see no way out, and I wish you would get me an extradition this board so that I can get a start in serving for the others. I know I am going to be tried for these crimes, and if possible I would like to take my medicine right away. I think I have served time enough already for this offense, and if possible would like to have an interview with you.

"Very respectfully,

"ALFRED GOUEN, 8149, 14 F. 3."

On January 21, 1918, D. E. Nicholson, secretary to the warden, had a conversation with the defendant relative to the note and its contents, and on April 3 following, E. M. Reynolds as special agent of the Northern Pacific Railway Company, had a conversation with defendant. Upon the trial of this case, and over the objections of counsel for defendant, the state was permitted to introduce in evidence the note (Exhibit 1), the conversation between defendant and Nicholson, and a portion of the conversation between defendant and Reynolds. The rulings of the trial court admitting this evidence furnish the only grounds of complaint in this court.

1. The admission in evidence of Exhibit 1 is contested upon the ground that it is a confession, and that a proper preliminary showing was not made that the writing of the note was the voluntary act of the defendant. Courts and text-writers speak somewhat loosely of voluntary and involuntary confessions, and though the terms "voluntary" and "involuntary" are not technically accurate, they serve for all practicable purposes. [1] By "involuntary confession," as the term is used, is meant a confession prompted by some inducement, generally

of hope or fear, sufficient to move a reasonably prudent person under the circumstances of the confessing party, to make such confession without regard to its truth or falsity. The rule governing the admissibility of confessions may be stated, briefly, **[2]** as follows: If the inducements to the confessing party are such that the prospects of bettering his situation by speaking even falsely would appeal to him, as a reasonable person, as the better alternative to remaining silent, then the confession ought not to be received as evidence against him, because it is testimonially untrustworthy. The purpose of the rule is not to exclude the truth, though it consists of an admission of guilt, but to avoid the possible confession of guilt by one who is, in **[3]** fact, innocent. The fair test to determine whether a confession is admissible is this: Was the inducement held out to the confessing party such as that there is any fair risk of a false confession? (*State* v. *Sherman,* 35 Mont. 512, 119 Am. St. Rep. 869, 90 Pac. 981.) Or, as the same rule is stated differently: "Were the prospects attending confession, as weighed at the time against the prospects attending nonconfession, such as to have created, in any considerable degree, a risk that a false confession would be made?" (1 Wigmore on Evidence, Chap. 28, p. 937.)

The record discloses that at the time Exhibit 1 was written, **[4, 5]** the officers of the Washington penitentiary did not know that the crime referred to in the exhibit, or any crime connected with the same matter, had been committed, and did not know, and could not have known, that defendant was accused or even suspected. From the very nature of the case they were, therefore, not in a position to hold out any inducements to defendant to make the statement which he did make. But, furthermore, when Nicholson interviewed him in January, 1918, he exhibited to defendant the note (Exhibit 1) and discussed with him fully every statement contained in it, and, when asked by Nicholson why he wrote the note, defendant replied: "It has been worrying me since I have been here, and I wanted it straightened. I have been thinking about it much."

Taking into consideration the character of the note, and these surrounding circumstances, the trial court was fully [6] justified in its ruling. The absence of inducements sufficient to render the confession inadmissible need not be shown by direct evidence. It may be proved, like any other fact, by circumstantial evidence. (16 C. J. 735.)

2. In so far as defendant's confession to Nicholson is concerned, it is sufficient to say that proper preliminary proof [7] was made. Nicholson testified that he did not hold out any inducements to defendant—did not make any threats or promises. The conversation was properly admitted. It was competent for the state to show that defendant had confessed his guilt, and it was not rendered inadmissible because it followed the terms of Exhibit 1. Whether Exhibit 1 or the conversation should be received in evidence first, was a matter within the discretion of the trial court. (*In re Colbert's Estate*, 51 Mont. 455, 153 Pac. 1022.) No possible prejudice could have resulted to defendant, since Exhibit 1 was introduced in evidence.

3. The witness Reynolds testified that he had a conversation with defendant on April 3, 1918, and in the conversation defendant stated that on May 17, 1915, and two or three days prior thereto, he and two companions were stopping on upper Main Street, in Helena, playing pool; that their finances were about exhausted; that on May 17 they went down toward the sixth ward and between 12 o'clock and 12:15, went west past the section-house; that they divided up a bunch of money, he (defendant) taking $200, his companions taking the balance; that he then went to Billings; that he did not know the names of his companions and never saw either of them afterward; that, while they were in the depot, a woman came to the ladies' waiting-room, and out again. Counsel for appellant, assuming that Reynolds testified to a confession made by defendant, invokes the rule heretofore considered; but the assumption is erroneous and the argument based thereon without merit. "A confession, as applied in criminal law, is a statement by a per-

son made at any time afterwards, that he committed or participated in the commission of a crime." (2 Wharton's Criminal Evidence, sec. 622.)

"The distinction between a confession and an admission, as applied in criminal law, is not a technical refinement, but based upon the substantive differences of the character of the evidence **[8, 9]** educed from each. A confession is a direct acknowledgment of guilt on the part of the accused, and, by the very force of the definition, excludes an admission, which, of itself, as applied in criminal law, is a statement by the accused, direct or implied, of facts pertinent to the issue, and tending, in connection with proof of other facts, to prove his guilt, but of itself is insufficient to authorize a conviction." (2 Wharton's Criminal Evidence, sec. 678a; 1 R. C. L. 550; 12 Cyc. 418; *State v. Campbell,* 73 Kan. 688, 9 Ann. Cas. 1203, 9 L. R. A. (n. s.) 533, 85 Pac. 784.)

The statement made to Reynolds, as detailed above, is not a confession, and is not subject to the rule which requires preliminary proof of its voluntary character. (1 Greenleaf on Evidence, 16th ed., 346, 347; *McGehee* v. *State,* 171 Ala. 19, 55 South. 159; *People* v. *Knowlton,* 122 Cal. 357, 55 Pac. 141.)

The judgment and order are affirmed.

*Affirmed.*

MR. CHIEF JUSTICE BRANTLY and ASSOCIATE JUSTICES HURLY and COOPER concur.