STATE, RESPONDENT, v. STEVENS, APPELLANT.

(No. 4,773.)

(Submitted June 4, 1921. Decided June 27, 1921.)

[199 Pac. 256.]

*Criminal Law — Grand Larceny — Admissions—Confessions— Motive — Evidence — Jurisdiction — County Attorney — Argument to Jury—New Trial—Newly Discovered Evidence— Harmless Error.*

Criminal Law—Guilt of Defendant Established—When New Trial not to be Granted.
1. Where the record conclusively establishes the guilt of the defendant charged with crime, a new trial will not be granted even though there was error on the trial, unless it clearly appears that such error actually prejudiced him in his right to a fair trial.

Grand Larceny—Mental Attitude of Defendant—Evidence—Admissibility.
2. In a prosecution for grand larceny, a statement of accused, made shortly before the commission of the crime, that it was unfair for some to have millions and others no money, that it should be distributed equally, and that most of the rich, including the president of the bank for which he worked and from which he stole, got their money by robbing the poor, *etc.*, *held* admissible to show the mental attitude of defendant toward private rights in property as well as his prejudice against persons who have acquired property.

Same—"Confession"—"Admission"—Definition.
3. A "confession" is an acknowledgment in express terms, by a party in a criminal case, of his guilt of the crime charged, while an "admission" is a statement by the accused, direct or implied, of facts pertinent to the issue, and tending, in connection with proof of other facts, to prove his guilt, but of itself insufficient to authorize a conviction.

Same—Admissions Against Interest—Admissibility.
4. While confessions may not be received in evidence unless shown to have been made voluntarily, admissions against interest are admissible without such a foundation having been laid, the party charged to have made them being permitted to show the circumstances under which they were made, for consideration of the jury in determining their weight.

Same.
5. Statements of one accused of grand larceny that two others were to meet him and divide the money, that his superior officer in the bank to which the money belonged told him to bring it to him from the postoffice, he to receive part of it, and that, on his way to the bank with the money, he stepped into an empty building, where two men received the money, knocked him down, went with him to the back of a house, where they gagged him, and that he was to meet them afterward and receive his share, were admissions, not confessions, being mere statements of fact from which guilt

[60 Mont. 390.]

might be inferred, but not acknowledgments thereof, and therefore admissible without first showing they were made voluntarily.

Same—Contradictory and False Statements—Admissions.

6. Statements made by defendant, claimed by him to have been confessions, which were contradictory of each other and false and used by the state, not as confessions, but as showing his attitude toward the crime, though on a different state of facts, *held* admissible as admissions against interest.

Same—Motive—Efforts to Borrow Money—Admissible in Evidence.

7. Evidence of efforts on the part of defendant charged with larceny to obtain a loan shortly prior to its commission was admissible to show an inducement or motive for the crime.

Same—Failure of Defendant to Testify—Instruction—Harmless Error.

8. Where defendant did not testify in his own behalf, an instruction in the words of section 9484, Revised Codes, that if defendant does testify, the jury, in judging of the credibility and weight of his testimony, may take into consideration the fact that he is the defendant and the nature and enormity of the crime, though unnecessary, was harmless.

Same—Money Surreptitiously Taken from Postoffice—Jurisdiction.

9. The fact that defendant bank employee surreptitiously secured the money with the larceny of which he was charged from the United States postoffice, and thus also committed an offense against the federal law, did not deprive the state court of jurisdiction to try the cause as for a crime committed under its statute, the jurisdictions not being conflicting.

Same—Admissions Against Interest—Whole of Statement to be Considered by Jury.

10. In considering statements against interest made by defendant after the charge for which he is on trial was made, the jury should take into consideration the whole statement or conversation, in view of the likelihood of the witness to forget or misunderstand what was said or intended.

Same—Admissions—Self-serving Declarations—Inadmissibility.

11. Evidence of statements in behalf of the party making them is not competent; hence an instruction that defendant was entitled to the benefit of what he said in his own behalf in certain admissions was properly refused.

Same—Trial—Objectionable Remarks by County Attorney—When not Reviewable.

12. Where the county attorney's argument to the jury is not shown in the record, and the portions of it deemed objectionable are not settled in any way by the court, error in this regard cannot be considered on appeal.

Same—Trial—Remarks by County Attorney—Context must be Shown.

13. A single statement or remark of the county attorney in his address to the jury, apart and separate from the connection in which it was used, is incapable of accurate interpretation, and hence determination of whether it was prejudicial to defendant, impossible.

---

7. Admissibility of evidence of financial condition of defendant in prosecution for larceny, see note in 19 Ann. Cas. 117.

[60 Mont. 390.]

Same—Admissions—Improper Persuasion and Inducements—Not Ground for New Trial.

14. Alleged improper methods consisting of persuasion and inducements to secure from defendant a statement as to the truth of defendant's connection with the larceny charged against him went to the weight of the statement as evidence for the jury's determination, and did not constitute a ground for a new trial, the interests of defendant having been fully protected on the trial in this respect.

Same—Newly Discovered Evidence—New Trial—When not to be Granted.

15. A new trial asked for on the ground of newly discovered evidence, based on a stipulation of counsel that after trial and sentence events occurred which showed that defendant did not profit from his crime, but that others obtained the money from the place where it was hidden by defendant, cannot be granted by the supreme court for the purpose of enabling him to obtain a lighter sentence than the court imposed in the absence of such knowledge.

*Appeals from District Court, Lewis and Clark County; R. Lee Word, Judge.*

CHARLES STEVENS was convicted of grand larceny, and appeals from the judgment and an order refusing a new trial. Affirmed.

*Mr. A. H. McConnell* and *Mr. F. W. Mettler,* for Appellant, submitted a brief and one in reply to that of Respondent; *Mr. Mettler* argued the cause orally.

The testimony of the witness Patrick Keys was improperly admitted. It could not have and did not have the remotest relation to or bearing upon the question of whether the defendant was guilty as charged in the information. On the other hand, it was calculated to, and undoubtedly did, prejudice the defendant in the minds of those members of the jury, if any, who were not socialists, or who might have lots of money, or have friends who had lots of money, and who did not obtain it by robbing the poor. As stated in the objection to the testimony, these statements only tend "to show the philosophy of the defendant," and while this philosophy may be unsound, it is not in any way criminal or unlawful. If the defendant had expressed the opinion or belief that in order to bring about the equal distribution of money it would be proper to steal from the rich; or if he had said that because

the rich people had stolen their money it would be proper
to steal from them in turn, a different question would now be
presented.

The testimony of the witness Benedict was even more glar-
ingly incompetent, improper and prejudicial. It was to the
effect that a short time before the time of the alleged robbery
the defendant came to him with Mrs. McNamara for the purpose
of borrowing $4,000, which was not the offense charged. If
it is criminal or immoral to attempt to borrow money, then all
men are immoral,—and some women. If an attempt to rob
Gilbert Benedict of $4,000 had been made, it is very doubtful
if the evidence would be even then competent, because there
was no real or apparent connection with the offense charged.

To render evidence of collateral facts competent, there must
be some natural, necessary or logical connection between them
and the inference or result which they are designed to es-
tablish. (8 R. C. L. 180, sec. 172.) A wider range of evi-
dence is permitted in showing intent or motive than is allowed
in support of other issues. But it cannot be extended to facts
or circumstances which do not naturally or necessarily bear
on the issue to be established, precisely as evidence of all
collateral facts and circumstances must be confined to the
proof of those which have a legitimate and direct connection
with the principal transaction. (*Id.,* sec. 174.) Where a
prisoner is charged with an offense, it is of the utmost im-
portance to him that the facts laid before the jury should
consist exclusively of the transaction which forms the subject
of the indictment and matters relating thereto, which, alone,
he can be expected to come prepared to answer. (*Id.,* sec.
194.)

The court erred in admitting in evidence the alleged con-
fessions, or, as they are called by counsel for the state and the
lower court, "admissions," of the defendant, as set forth in
specifications of error No. 8, 9, 10 and 11. There were two of
these confessions, the first implicating Ford and Blodgett, and
the second implicating Kaufman and his nephew, Earl Fallon.

We will first take up the question of whether these statements are in fact confessions, or merely admissions.

Mr. Wharton in volume 2 of his work on Criminal Evidence, page 1266, distinguishes confessions from admissions as follows: "An admission is distinguished from a confession by the fact that the term 'admission' in criminal matters relates to matters of fact that do not involve criminal intent, and a confession is an acknowledgment of guilt. The distinction between confessions and admissions must always be maintained, from the fact that admissions are always admissible in evidence under an exception to the rule excluding hearsay evidence, provided such admissions are made against interest, while a confession must be affirmatively shown to have been made under conditions which would not induce a false statement." A reading of the details of the written confession implicating Ford and Blodgett, in the light of the foregoing clearly defined distinction between an admission and a confession, will leave no doubt that it is a confession, pure and simple.

Each of these confessions, while absolutely inconsistent with the other, is perfectly consistent with the guilt of the defendant, and utterly inconsistent with his innocence. In neither case is there a single element or fact necessary to constitute the offense charged in the information. In neither confession is there anything to indicate that the defendant participated in the crime unwillingly, either through fear or compulsion,, and in each case the apparent motive was that he was to receive a part of the stolen money.

Of course, both confessions were apparently false, at least in part, but this does not change their character as confessions. The very purpose of the rule of law requiring that confessions shall be voluntary is to prevent false confessions from being given. (*State* v. *Guie*, 56 Mont. 485, 186 Pac. 329.) In the case last above cited this court has laid down the rule and definition that a confession, as applied in criminal law, is a statement by a person made at any time afterward,

that he had committed, or participated in the commission of, a crime. The two confessions under consideration come squarely within that definition, and their admission in evidence was prejudicial error.

It is elementary law that a confession of a person accused of crime is inadmissible in evidence if not freely and voluntarily made. (1 R. C. L., sec. 100, p. 552.) One of the prime requisites of a confession competent to be proved against the party making it is that it be made voluntarily and without restraint, coercion or influence of any kind, but if so made it is competent evidence. (3 Ency. of Ev., p. 301.) The foregoing rule has been laid down in this state in a very early decision. (*Territory* v. *McClin,* 1 Mont. 394.) Also in a later case it was held that it is elementary that before a confession can be received in evidence in a criminal case it must appear that it was voluntary. (*Territory* v. *Underwood,* 8 Mont. 131, 19 Pac. 398.)

Among other states which have adopted the rule above set forth as to the burden of proof in the case of the offer of a confession is California. (*People* v. *Soto,* 49 Cal. 67; *People* v. *Castro,* 125 Cal. 521, 58 Pac. 133.) While not directly passing upon the point, this court has by implication, at least, approved the rule in a comparatively recent case. (*State* v. *Guie,* 56 Mont. 485, 186 Pac. 329.)

Newly discovered evidence: Testing the newly discovered evidence presented by the defendant in this case upon the motion for a new trial, we contend that it answers every one of these requirements laid down as necessary in the case of *State* v. *Van Laningham,* 55 Mont. 17, 173 Pac. 795.

It may be argued that even if the newly discovered evidence were offered upon a new trial, the defendant would nevertheless be found guilty. But it cannot be argued that upon a verdict of guilty the result would be the same so far as the penalty is concerned. The record in this case shows that the defendant was given the extreme penalty under the law, probably for the reason that the trial judge was of the opinion

that the defendant had made away with the money, or that he had knowledge of the person or persons who had done so. The newly discovered evidence shows that the defendant did not know where the money was, and had nothing to do with its being taken from the old Kleinschmidt building. Had the facts as set forth in the stipulation of the parties hereto, and presented upon the motion for a new trial, been before the court at the time sentence was pronounced on the defendant, it seems certain that the extreme penalty would not have been imposed; and the imposition of a less penalty would be a changing of the result.

While the exact point we are here attempting to present has apparently not been passed upon by the courts, the principle upon which it is based has been laid down in an Iowa case as follows: Newly discovered evidence of the value of the embezzled property which will reduce the offense from a felony to a misdemeanor is ground for a new trial. (*State* v. *Foster,* 37 Iowa, 404.)

*Mr. Wellington D. Rankin,* Attorney General, being disqualified, *Mr. Jos. R. Wine,* County Attorney of Lewis and Clark County, submitted a brief in behalf of Respondent, and argued the cause orally.

MR. JUSTICE REYNOLDS delivered the opinion of the court.

Defendant was charged with grand larceny, tried and convicted, and judgment followed. Motion for new trial was made and overruled. Defendant has appealed from the judgment and order overruling the motion. Motion was made in this court to dismiss the appeals because of delay of appellant in serving and filing transcript and brief.

Defendant was employed by the Union Bank & Trust Company of Helena, and was under the immediate supervision of R. O. Kaufman, one of its officers. The bank arranged for a shipment of $40,000 in currency from Butte, which reached Helena on the fifth of November, 1919. Defendant, although

[60. Mont. 390.]

not authorized to do so, called at the postoffice for the package and received it. His conduct while returning to the bank attracted the attention of one Mrs. Agnes Watkins, who saw him, with a package in his hand, enter a building on Park Avenue known as the Old Kleinschmidt building. Later he was seen by her to emerge from the building without the package, and proceed rapidly in the direction of the bank. Later defendant was found lying face downward in a small shed or alleyway, bound and gagged, and with the appearance of having been seriously injured. He was taken to the hospital, where he first told a story of having been robbed. However, there were features in connection with the story which caused it to be disbelieved, and thereafter defendant made several different statements as to the affair which evidently were false. The questions involved on these appeals relate to the admissibility of evidence, alleged errors in giving and refusing instructions, newly discovered evidence, and misconduct of counsel for the state.

The contention is not made that defendant was innocent of the crime charged, but that technically he did not receive a fair trial in the respects mentioned. While an accused person, even though guilty, is entitled to a fair trial, yet this [1] court will not grant a new trial where the record conclusively establishes the guilt of the defendant, even though there was error, unless it clearly appears that the error of which complaint is made actually prejudiced the defendant in his right to a fair trial.

It is alleged that the court erred in admitting in evidence [2] the testimony of witness Patrick Keyes, wherein he stated that at a short time prior to the larceny defendant stated that he "thought it was unfair for some people to have hundreds of thousands or a million dollars, and a poor person not have any; he thought the money should be distributed equally with everybody, and the most of the people that had lots of money, they got it by robbing the poor people," in that connection referring particularly to Mr. McKinnon, president

of the Union Bank & Trust Company. Objection was made
to this testimony on the ground that it only tends to show
the philosophy of the defendant, which has no probative value,
and that it was not connected, either directly or indirectly,
with the issues involved. It may be conceded that this evi-
dence is somewhat remote, but we cannot hold that it was
entirely immaterial. Such evidence tends to show the mental
attitude of the defendant toward private rights in property,
and, while not direct evidence that he did or would commit
such a crime, yet it has a bearing in showing a prejudice
against people who have acquired property, particularly the
president of the bank from which bank the money was taken,
which, in turn, would tend to make it easier to excuse one's
self in an attempt to take such property from another who,
he believes, has illegitimately secured it.

The state offered in evidence testimony of Lester Lightbody,
[3, 4] deputy sheriff, as to certain statements against interest
made by defendant, to which defendant objected and saved his
exception. The first statement was included within the follow-
ing testimony: "At this time, when the name of Marias or some
similar name was given, the defendant was asked—I think Mr.
Barnes said, 'Charley, them ain't the names of them fellows;
you know the names of them,' and he said, 'Is it Ford and
Blodgett?' And Stevens says, 'Yes.' He said they was to
meet him at the Palmer House that night and divide the
money. Ford and Blodgett was arrested that morning about
five minutes after Stevens told us this. Stevens was then taken
to the county jail, and Ford and Blodgett were arrested at
the Palmer House. I was present in the jail later when Ford
and Blodgett and Stevens were there."

The second statement was included in the following testi-
mony: "He told me he was sorry that he got Ford and
Blodgett in any trouble; that they were innocent of any
wrongdoing. He said they had nothing to do with it. At this
time he said Ralph Kaufman had something to do with it,
and that he turned the money over to Kaufman. The story

he told me as to how the whole thing happened was that he was to go and get the money and was to go back to the bank with it, and that if nobody there had seen him come in he was to go down to the basement with the money. As to where they made this arrangement, he said that Mr. Kaufman came up to his desk and made the arrangement at his desk; that he said he had been very good in helping him along, and intended to keep on helping him, and then he told him he wanted Stevens to go and get this money and fetch it to him. He did not say that Earl Fallon had any connection with this story. He did not tell me anything about Fallon at this time at all, not on that day at all; it was the next day he told me about Fallon. As to what he said when he came back to the bank and just how they arranged that, he said he went down to the basement and turned the money over to Mr. Kaufman. He told me how much he was to receive for his part in it; he was to receive $500. He did not say who was to get the rest. With reference to the explanation he made to me relative to any footmarks or finger-prints on State's Exhibit 15, the paper, I told him it looked peculiar to me when a paper would be found in that building when it could be burned up in the basement, and what was his idea in going back with the paper; he said that it wasn't his idea; that Kaufman wanted him to take the paper back there. As to the way he said any print got on the paper, he told me Mr. Kaufman had him step on the paper in the basement, and had him put his hand in the dust and put the finger-prints on the paper, and that Mr. Kaufman had him take the paper back to the Kleinschmidt building. He did not explain to me at that time how he came to be tied up. I had a further conversation with him about Fallon; I had several conversations with him about Fallon, but he never said anything connecting Fallon with it at all, with the exception of once when he said he didn't see why 'they didn't get Fallon and put him in jail, as well as putting me in jail.' He was asked at that time as to why Fallon should be put in jail, and he refused to answer. This defendant told me the money was

in the bank; he said he turned it over to Mr. Kaufman. He told me the reason he told the story about the robbery and of the automobile being in the alley was because that was the first story that he and Kaufman had made up. He told me that when he seen the officers did not believe the story Mr. Kaufman said, 'Charley, we will have to change that story; they don't believe it.' According to what Stevens said, it was Kaufman that told him to tell the Ford and Blodgett story, and he said they made the arrangement to tell the Ford and Blodgett story in the county jail."

Objection was also made to the introduction in evidence of State's Exhibit 28 on the same ground, which exhibit consists of a written statement in defendant's handwriting, and is as follows: "The man by the name of Ford whom I saw in the county jail Friday morning, November 7, stopped me on Main Street some time I believe during the month of September, and wanted to carry a sack of silver containing $1,000 to the express office. Two different times, either before or afterward, he stopped me on Main Street and remarked about large packages of currency from the postoffice. Yesterday morning while I was on my way to the postoffice I met this man Ford, accompanied by a gray-haired man, whom I also saw in the county jail at the same time Ford was there. I have been since told that the gray-haired man's name is Blodgett or similar name. I know him positively when I see him. These men mentioned to me about a package of money at the postoffice. They told me to let them have the money when I secured it, and I would make some haul. They said to come down Park Avenue, and they would take it and do away with the whole thing, and at the same time make a hell of a fight to keep it. Most of the talking was done by Ford. I went to the registry window at the postoffice, and Mr. Faith refused to let me have the registered mail, and said my order had been canceled, so I said that I would get Mr. Chivers or someone with authority to come and get it; I went back to the bank by way of Park Avenue, but seen neither of the men. After lunch I again

went back to the postoffice after doing some errand, and got the common mail, and then went over to the registry window, and Mr. Williams said, 'What bank?' and I said, 'Union,' and he gave me the registered mail, three in all, including the currency which was stolen. I went down Park Avenue, and one man stepped out of the empty building and walked down the street, and then I came to an open door, and inside stood the two men, and received the currency, and also grabbing my leather pouch, containing some $600. There are the two men above described. I also went into the building and was knocked down by one in trying to secure my leather pouch. Then they said they would hide it, and then the both of them and myself went over to the back of the Smoke House, and I was gagged by both and tied and that was all I can remember, only that I was to meet them in the Palmer House last night; they told me in the old empty rock building above mentioned I would receive my share."

The objections to these statements and exhibit were based on the claim that each of them constituted a confession by defendant, and therefore they were not admissible in evidence under the rule that a confession may not be received in evidence unless a proper foundation is laid therefor, showing that it was made voluntarily, without threats or inducements whereby there might appear to be an object in the accused making a false confession. This rule was not established to protect the guilty against his truthful confession, but is designed to guard the innocent against a false confession made under duress, promise of reward of some nature, or other inducement. If the foregoing statements constituted in law confessions, then this question of their admissibility would arise. The state, however, contends that these statements were not confessions, but merely admissions. If they were admissions, then the rule applicable to confessions does not apply, for admissions against interest are always competent without such a foundation being laid, with the privilege, however, to the opposite party on cross-examination to show the circum-

stances under which they were made, which circumstances may be considered by the jury in determining the weight to be given to them. The vital point, then, is whether or not the statements hereinbefore set forth were admissions or confessions.

This court has discussed this question concisely but clearly in the case of *State* v. *Guie,* 56 Mont. 485, 186 Pac. 329, where Wharton's Criminal Evidence on this subject is quoted with approval by Mr. Justice Holloway, who delivered the opinion of the court: "The distinction between a confession and an admission, as applied in criminal law, is not a technical refinement, but based upon the substantive differences of the character of the evidence deduced from each. A confession is a direct acknowledgment of guilt on the part of the accused, and, by the very force of the definition, excludes an admission, which, of itself, as applied in criminal law, is a statement by the accused, direct or implied, of facts pertinent to the issue, and tending, in connection with proof of other facts, to prove his guilt, but of itself is insufficient to authorize a conviction."

A confession is an acknowledgment in express terms, by a party in a criminal case, of his guilt of the crime charged, and it is only with respect to confessions thus defined that the rule prevails that preliminary proof that they were voluntary must be made before they can be admitted in evidence. (*People* v. *Fowler,* 178 Cal. 657, 174 Pac. 892.) "Unless the statement of the defendant is broad enough to comprehend every essential element necessary to make out the case against him, it cannot be said to be an admission of guilt." (*Owens* v. *State,* 120 Ga. 296, 48 S. E. 21.) "A 'confession' in a legal sense is restricted to an acknowledgment of guilt, made by a person after an offense has been committed, and does not apply to a mere statement or declaration of an independent fact from which such guilt may be inferred." (*State* v. *Reinhart,* 26 Or. 466, 38 Pac. 822.)

If any one of the statements made by defendant constituted [5] a direct acknowledgment on his part that he stole the

[60 Mont. 390.]

money, then such statement constitutes a confession, but if it was merely a statement of relevant facts from which guilt might be inferred, of itself insufficient to authorize a conviction, then it was merely an admission. In the first statement defendant merely charged Ford and Blodgett with the larceny, and said that they were to meet him that night to divide the money. The statement was a statement of facts from which guilt might be inferred, but was not an acknowledgment that he had appropriated the money, or any part thereof, to his own use, with intent to deprive the true owner thereof, which elements were necessary to establish his guilt. The second statement consisted, in substance, of a charge that Mr. Kaufman directed him to get the money and to deliver it to him in the basement of the bank, that he did so, and that he was to receive $500 for the service. From this statement alone the essential elements of the crime are not shown, and no conviction could possibly have been based upon it. It does not even appear from that statement that he ever received the $500 promised, or any other portion of the money that was taken; and, so far as getting the money and delivering it to Kaufman was concerned, that could not constitute a larceny on the part of defendant, because Kaufman was his superior officer in the bank, and one who had the right to direct defendant to get the money and turn it over to him. The only allegation in Exhibit 28 which would be incriminating at all would be the statement by defendant that he went down Park Avenue, stepped inside the open door of an empty building, when two men received the currency and grabbed the leather pouch containing $600, knocked him down, and said that they would hide it, and that they went with defendant to the back of the Smoke House, gagged him, and that defendant was to meet them at the Palmer House that night, where he would receive his share. The foregoing is a statement of facts from which an inference may readily be drawn that defendant was in a conspiracy with these men to commit the crime, but it is not an acknowledgment that he stole the money. He does not say

that he voluntarily delivered the money to the men, or that he voluntarily submitted to being gagged and tied by them, or that he afterward went to the Palmer House to meet them, or received any share of the fund.

It is also to be noted that these statements of defendant [6] were not used as confessions to prove the facts set forth in the several statements. They were contradictory of each other, and the state tried its case upon the theory that each of them was absolutely false; hence the state did not contend that as confessions they categorically established the guilt of defendant, but merely that they showed his attitude toward the crime. Naturally an innocent man will tell the truth regarding the affair in question, and not make misrepresentations inconsistent with each other. For these reasons the statements in this case were inconsistent with any theory of innocence on the part of defendant, thus tending to prove his guilt, even though on a different state of facts; and for this reason they were competent evidence as admissions of facts made against interest. It is therefore our opinion that the ruling of the court in holding that these various statements were admissions and not confessions was correct, and hence no error was committed in the court's rulings upon the objections.

It is urged that the court erred in admitting evidence of [7] Gilbert Benedict to the effect that a short time before the date of the larceny defendant, together with one Mrs. McNamara, came to him for the purpose of borrowing $4,000, and that he did not have the money to give to them. Efforts on the part of defendant charged with larceny, made to secure money shortly prior to the alleged crime, are admissible in evidence for the purpose of showing an inducement or motive for committing the crime. It must be presumed that a person will not seek to make a loan of money unless he wants the money, and if he wants the money then that fact is in itself a motive for stealing it.

Complaint is made that the court erred in giving to the [8] jury instruction No. 24, which reads as follows: "A

[60 Mont. 390.]

defendant in a criminal action or proceeding cannot be com-
pelled to be a witness against himself; but he may be sworn
and may testify in his own behalf, and the jury in judging
of his credibility and the weight to be given to his testimony
may take into consideration the fact that he is the defendant,
and the nature and enormity of the crime of which he is
accused. If the defendant does not claim the right to be
sworn, or does not testify, it must not be used to his prejudice,
and the attorney prosecuting must not comment to the court
or jury on the same.'' Objection was made for the reason that
in this case the defendant did not take the stand, and there-
fore any charge to the jury advising it how to judge of his
credibility and the weight to be given to his testimony was
improper. The instruction in question is a literal copy of the
statute, and unquestionably is a correct statement of the law.
(Rev. Codes, sec. 9484.) Inasmuch as the defendant did not
take the stand in his own behalf, it was unnecessary for the
court to instruct the jury in regard to the weight it should
give to his testimony, for he gave no testimony to consider;
but we are unable to see wherein the giving of the instruction
could have been harmful. Since defendant did not testify, the
jury could not act upon that portion of the instruction.

Defendant offered three different instructions, to the effect
[9] that if defendant took the money from the United States
postoffice with the intention to steal the same and thereafter
appropriate the same to his own use and benefit with the in-
tention of depriving the true owner thereof, then the offense
would be one over which the federal court has exclusive juris-
diction. It may be conceded that, under a situation such as
is set forth in the instruction, such offense would be a viola-
tion of the laws of the United States, and that it would be
such an offense as would be within the jurisdiction of the
federal courts, although we do not pass upon that question.
The mere fact, however, that it was an offense against the fed-
eral law does not deprive the state court of jurisdiction in the
prosecution of an offense that defendant may have committed

under the state law. The jurisdictions are not conflicting, but each has full and complete jurisdiction in its respective courts. A similar situation exists as to many crimes, among which are the familiar one of sedition and counterfeiting. We find no error in the refusal of these offered instructions.

An instruction was offered by defendant as to the weight to be given to the alleged confessions which were admitted in evidence, going into detail as to the facts and circumstances which should be considered by the jury in determining the weight to be given to them. The court gave an instruction practically *verbatim* of that offered by defendant, except that the word "admissions" was inserted in place of the word "confessions." In view of our holding that these statements were admissions, the court properly modified the instruction as above mentioned, and as properly refused the one offered by defendant.

Several other instructions were offered by defendant regarding the weight to be given to the alleged confessions, and the necessity that such confessions be freely and voluntarily made before they may be received as evidence. These instructions were properly refused on the theory that the statements were admissions and not confessions.

Exception was taken to the refusal of the court to give the [10, 11] following offered instruction: "You are instructed that you have a right to consider any statements shown to have been made by the defendant after the charge was made against him, but in considering such statements you must consider the whole statements or conversation together. The defendant is entitled to the benefit of what he said in his own behalf, if you believe it is true; but if you do not believe it is true, you are not bound to believe and consider it because proven by the state. You should consider such statement, however, with caution, on account of the liability of the witness to forget or misunderstand what was really said or intended." This instruction contains some features of merit, but other features are clearly not meritorious, and therefore were

sufficient to justify the court in refusing it. It is true that in considering statements made by defendant the jury should consider the whole statement or conversation given, and that any admissions made by defendant should be received with caution, on account of the liability of the witness to forget or misunderstand what was really said or intended. The balance of the instruction, however, is somewhat confusing, and this court is not sure of the interpretation that the jury would have given to it if it had been given as requested. At least it contains the element of instructing the jury that it may give the defendant the benefit of any statements that he may have made in his own behalf. The rule is elementary that evidence of statements in behalf of the party making them is not competent, but only such statements as are made against interest. If this offered instruction is to be interpreted to mean that any statement that defendant may have made in his own behalf shall be considered as evidence in his favor, then the instruction would be clearly erroneous. However, in view of the confusion that might have resulted and the possible misinterpretation of the instruction by the jury if it had been given, the court was warranted in refusing it.

Objection was made by defendant to alleged remarks of [12] the county attorney in his closing argument. In this connection it may be well to remark that the address of the county attorney is not shown in the transcript, nor are any of the portions of it to which objection was made settled in any way by the court. The record merely shows the objections of defendant without any record to which the objections can apply. If appellant desires to have such questions reviewed in this court, the record should show what actually took place, so that there may be no uncertainty as to what the facts in question were. Furthermore, inasmuch as the text of the county attorney's address is not before us, we are unable to determine the connection in which the remarks in question were used. It is universally recognized that a single statement or remark, standing alone, apart and separate from the con-

nection in which it was used, cannot be accurately interpreted. Oftentimes remarks, when separated from the context, are construed to convey ideas just the opposite of those expressed. If the statements were made as set forth in these several objections, we cannot give them a proper construction without the con text, and therefore are unable to say that such remarks were in any way prejudicial to the interests of the defendant.

It is also contended by defendant that in connection with [13, 14] the alleged improper remarks of counsel above discussed, and from evidence contained in the record of unfair methods employed by him in obtaining admissions and confessions from defendant without permitting him to have the benefit of advice of counsel or otherwise advising him as to his rights, and in permitting others to use improper methods in obtaining such admissions and confessions, misconduct on the part of counsel is shown prejudicial to the rights of defendant, and that thereby defendant was deprived of that fair and impartial trial guaranteed him by the Constitution and laws of the state of Montana. The alleged improper methods referred to were the persuasion and inducements which were brought to bear upon defendant to secure from him a statement of the truth in connection with the matter. There is no question but that the so-called "third degree" methods can be carried to the extreme, and when so employed are reprehensible. In this case we do not say that extreme "third degree" methods were used, but, as testified to by Mr. Kaufman, he held out to the defendant certain inducements and strong persuasive arguments in order to secure a statement, particularly as to the location of the money. The statements made having been admissions as hereinbefore pointed out, all the facts and circumstances connected with the making of the statements were admissible in evidence as bearing upon the weight to be given to the statements, and the record discloses that these facts and circumstances were thoroughly brought out. The impropriety of the inducements merely went to the weight of the evidence, and were for the jury to consider in

determining that question, but such impropriety would not constitute a ground for a new trial. The acts that were done cannot be undone, and the facts in regard to such alleged impropriety would be the same upon another trial as upon the trial that has already been had. The interests of defendant in this respect were as fully protected on the trial as he could rightfully demand, and as well as they could be protected on another trial, if granted. There is nothing in this matter whereby it can be said that defendant was deprived of the fair and impartial trial guaranteed him by the Constitution and laws of this state.

Defendant insists that a new trial should be granted on the [15] ground of newly discovered evidence, which newly discovered evidence is set forth in the record by stipulation. As this matter is covered by stipulation, it is safe to assume that the allegations therein made are correct. It appears from this stipulation that after the trial and sentence of defendant it was discovered that Mrs. Agnes Watkins had disclosed to her husband the circumstances of seeing defendant go into the Kleinschmidt building and his strange actions, including the fact that he went into the building with the package, and came out without the package, and as a result of this disclosure her husband and one Frank Smith went to the building and found the money. The money was divided, and a considerable portion of it spent by the Watkinses. Smith, with his share of the money, disappeared, and has never been found. The Watkinses were charged with larceny, and pleaded guilty to the charge. From this stipulation it appears that defendant reaped no profit from the larceny with which he was charged. Inasmuch as the court gave him the maximum sentence in the penitentiary of from seven to fourteen years, without knowledge of the facts revealed by this stipulation, it is contended that, while this newly discovered evidence would not have any effect upon the result of the trial as to whether or not the defendant should be found guilty, yet it would probably have the result of reducing the sentence. However that

may be, which is merely a presumption, yet this court cannot invade the province of the district court in imposing sentence upon him who has been convicted of a crime. That is a matter exclusively within the absolute discretion of the trial court. So far as we know, no case has ever been reversed because the sentence was excessive. If, in view of the newly discovered evidence defendant or his counsel deems the sentence excessive, then his remedy is to appeal to executive clemency, and not to this court. In our view of the case, the newly discovered evidence fits in perfectly with the statement of defendant that he left the money in the Kleinschmidt building, supplemented by the testimony of Agnes Watkins that she observed his actions at the time, and conclusively establishes the guilt of defendant. As suggested in the forepart of this opinion, error prejudicial to defendant must be shown before a new trial can be ordered, and the record fails to show any such error.

The motion to dismiss the appeals is denied, and the judgment and order are affirmed.

*Affirmed.*

MR. CHIEF JUSTICE BRANTLY and ASSOCIATE JUSTICES COOPER and GALEN concur.

MR. JUSTICE HOLLOWAY: I concur in the result reached, but do not subscribe to all that is said in the foregoing opinion.

Rehearing denied July 18, 1921.