FRANK R. DRYMAN, also known as Frank Valentine, Petitioner v. STATE OF MONTANA, and WARDEN FLOYD E. POWELL, Respondents.

No. 10250.

Submitted April 17, 1961. Decided May 12, 1961.

Certiorari denied United States Supreme Court, February 19, 1962.

361 P.2d 959.

MR. CHIEF JUSTICE HARRISON delivered the Opinion of the Court.

Original petition for writ of habeas corpus.

Frank R. Dryman having filed herein a petition for writ of habeas corpus which discloses that the issues therein raised have been previously submitted to the district court wherein petitioner was convicted and by it denied.

Petitioner contends no appeal was taken from his conviction due to the death of defense counsel. The records of the trial court disclose that trial was had in February of 1955, the commitment being signed and filed on February 19, 1955. No motion for new trial was made nor was any application made for time to settle a bill of exceptions in order that an appeal might be made. Our records indicate that defense counsel died on January 15, 1956, nearly a year after the trial. Section 94-8105, R.C.M. 1947, provides that an appeal must be taken within six months after rendition of the judgment.

Petitioner was before this court on three previous occasions, the first being reported in 125 Mont. 500, 241 P.2d 821, at

which time he was represented by two attorneys, opinion handed down on February 15, 1952.

The second occasion is reported in 127 Mont. 579, 269 P.2d 796, and he was represented by one attorney. Opinion was handed down on April 29, 1954.

The third occasion is reported in State ex rel. Dryman v. District Court of Ninth Judicial District, 128 Mont. 402, 276 P.2d 969, and he was represented by one attorney, being the same person as on each of the two previous cases. Opinion was handed down on November 22, 1954.

It will be seen that petitioner's rights were well-guarded by his counsel at every stage and the same counsel represented him upon his last trial in February of 1955.

Petitioner quotes portions of testimony and contends that such testimony discloses his confession was involuntary. No complete record of the proceedings had at the last trial, which resulted in the conviction of petitioner, has been furnished us, no appeal having been taken. We are not able to determine whether the confession was even used in evidence, but that fact would have been known to the district judge who presided and as will be seen further in this opinion such judge ruled adversely upon a previous application for a writ of habeas corpus by petitioner.

Petitioner states that he was beaten and struck with a shot-load sap by the sheriff while six or more officers held him in a chair, prior to signing the confession and in support of such allegation quotes portions of testimony allegedly given by Chief of Police R. F. Dennison. Since an authenticated copy of such testimony has not been furnished, we are unable to examine the entire testimony of this witness. However, this cause was previously tried and we have consulted the record which contains the entire testimony of this same witness on that trial and it is much the same as that quoted by petitioner except the witness stated that the sheriff struck the defendant

with the sap on the wrist and "just tapped him across the leg. He didn't really strike him — just tapped him.

"Q. Just slapped him on the wrist and tapped him a little bit on the leg? A. That's right.

"Q. Did he use any force at all? A. Not very much."

This occurrence was on April 5, 1951, according to this witness, and the questioning of the defendant did not commence until the night of April 6th and it was not until April 10th that the defendant made the statements by way of confession, which were transcribed and signed by defendant on April 11th.

In the record of the previous trial this appears to be the only occasion of any physical contact and there is no testimony that defendant was held in a chair by six or more officers, in fact the testimony of the chief of police negatives any such situation by his description of the situation prevailing in the room at the time of this occurrence.

The prior trial also discloses that petitioner on April 12, 1951, wrote a letter and delivered it to John C. Hoyt, then county attorney, with request that he mail it, which Hoyt did. It was mailed in an envelope with the return address: "Sheriff's office. Toole County, Shelby, Montana." The letter was returned to the sheriff because the addressee was unknown. It was addressed to Mr. and Mrs. Frank Valentine, El Monte, California, father and mother of petitioner. In this letter petitioner advised his parents of his situation, "that he was in jail for murder, that he killed a man and had already been before the Judge and sentenced to be hanged." Among other statements is this: "It was cold-blooded murder. I put seven .45 slugs in him. It's not easy to explain so I won't try."

While petitioner contends that Blackburn v. State of Alabama, 361 U.S. 199, 80 Sup. Ct. 274, 4 L.Ed.2d 242, established a new precedent with regard to confessions we must disagree as far as our state jurisprudence is concerned.

Section 94-3918, R.C.M. 1947, enacted in 1911, provides:

"It shall be unlawful for any sheriff, constable, police officer, or any persons charged with the custody of any one accused of crime, of whatever nature, or with the violation of a municipal ordinance, to frighten or attempt to frighten by threats, torture, or attempt to torture, or resort to any means of an inhuman nature, or practice what is commonly known as the 'third degree' in order to secure a confession from such person."

The following excerpts from but a few of the prior decisions of this court show clearly that our state has espoused the doctrine of the Blackburn case and never deviated from it:

In State v. Dixson, 80 Mont. 181, 195, 260 P. 138, 143, the court said:

"Each of the witnesses testified that at the time of such statements made to each the alleged burglary was the subject of the conversation. The statements were not mere admissions; they were confessions. 'A confession, as applied in criminal law, is a statement by a person made at any time afterwards, that he committed or participated in the commission of a crime.' State v. Guie, 56 Mont. 485, 186 P. 329. The statements of defendant meet the requirements of the foregoing definition of a confession. Preliminary proof of being voluntary is not necessary to admission in evidence of an admission of a defendant *but is necessary to admission in evidence of a confession.* State v. Stevens, 60 Mont. 390, 199 P. 256. *Therefore, preliminary proof that they were voluntary was necessary, in order to render admissible these statements of defendant.*

"Counsel for defendant contend that such preliminary proof was not made. Counsel on each side have submitted, on this point, many citations, to support their respective contentions. Perusal of them shows that on the vexed point of admissibility of testimony of confessions there is a great conflict of authority and that almost any kind of judicial decisions desired may be found in abundance. Running through them all, however, is the pronounced attitude of courts of last resort that each case

depends largely upon its own peculiar facts. That declaration has been made by this court. State v. Sherman, 35 Mont. 512, 90 P. 981 [119 Am.St.Rep. 869]. However wide may be the range of authorities on this point and however great the conflict, the principles of law in that respect, in this state, have been settled by the decisions of this court, and it is not necessary to go further than our own decisions, for principles.

"To begin with, the question of the admissibility of a confession alleged to have been made by a defendant while in custody is one to be determined in the first instance (State v. Kacar, 74 Mont. 269, 240 P. 365) by the court. The court having decided the evidence to be admissible, its finding thereon will not be disturbed on appeal, unless clearly against the weight of the evidence. State v. Walsh, 72 Mont. 110, 232 P. 194.

" 'The only fair test, if such it can be called, * * * is this: Was the inducement held out to the accused such as that there is any fair risk of a false confession? For the object of the rule is not to exclude a confession of the truth, but to avoid the possibility of a confession of guilt from one who is in fact innocent.' State v. Sherman, supra.

" 'The purpose of the rule is not to exclude the truth, though it consists of an admission of guilt, but to avoid the possible confession of guilt by one who is, in fact, innocent. The fair test to determine whether a confession is admissible is this: Was the inducement held out to the confessing party such as that there is any fair risk of a false confession?' State v. Guie, supra.

" 'This rule was not established to protect the guilty against his truthful confession, but is designed to guard the innocent against a false confession made under duress, promise of reward of some nature, or other inducement.' State v. Stevens, supra.

"Judged by the foregoing pronouncements of the law, we

do not believe any of the statements of defendant were improperly admitted in evidence.'' Emphasis supplied.

In State v. Ratkovich, 111 Mont. 19, 25, 105 P.2d 679, 682, the court said:

''It is further urged by the defendant that the court erred in admitting the confession of the defendant for the reason that the testimony indicated that he was a person of limited mental ability. There is testimony on the part of several witnesses that this defendant (past 36 years of age at the time of trial) had the mind of a boy twelve years or less of age. The court should, of course, use caution in admitting evidence of a confession. Here, however, the testimony of the defendant, his general statements and admissions, conduct and attitude indicate that the court did not err in admitting the confession. The question is addressed to the sound discretion of the court, and we find nothing here to indicate that the court, guided by its personal observation of the defendant, committed any error in admitting the confession. Appropriate instructions were given as to the caution to be used by the jury in considering this confession — particularly in view of the testimony as to the defendant's mental ability. We find no error in the admission of the testimony as to the confession. 16 C.J. 729.''

In State v. Crighton, 97 Mont. 387, 400, 34 P.2d 511, 513, the court said:

''We do not find anything definite in the record which indicates the circumstances under which the writing was made. There is nothing to show that defendant made it voluntarily or whether it was induced by promises held out. He was in the hands of the officers of the law, and some statement of the facts surrounding the making of the deposition should have been given to the district court so that it might rule advisedly upon the point whether the confession was or was not admissible.

''We have examined the decisions in State v. Sherman, 35

Mont. 512, 90 P. 981, 119 Am.St.Rep. 869; State v. Berberick, 38 Mont. 423, 100 P. 209, 16 Ann.Cas. 1077; State v. Guie, 56 Mont. 485, 186 P. 329, and State v. Dixson, 80 Mont. 181, 260 P. 138, from which we have no doubt that the writing, if admissible in evidence at all, would be deemed a confession; but before being admitted in evidence a proper foundation for its introduction was essential. State v. Dixson, supra; State v. Hoffman, 94 Mont. 573, 23 P.2d 972. The authorities on the subject are well summarized in 15 C.J. 717: 'A confession of guilt by accused is admissible against him when and only when, it was freely and voluntarily made without having been induced by the expectation of any promised benefit nor by the fear of any threatened injury.' ''

When a change of venue was granted and made effective by this court it also resulted in a change of the district judge who presided over the last trial since the case was tried in a different judicial district.

The district judge who presided at the trial of petitioner is a distinguished jurist, has been on the bench for more than thirty-two years and prior to his coming to the bench for many years was an active practicing lawyer. His service on the bench and at the bar has been such that we have confidence in his legal judgment and place considerable weight upon the statement in his order denying a writ of habeas corpus, wherein he stated:

''And it appearing to the court that all of the matters presented by said petition for writ of habeas corpus have heretofore been considered adversely to the petitioner, and no appeal from said decision having been made * * *.''

No cause appearing, it is ordered that the petition for writ of habeas corpus be denied and the proceeding dismissed.

MR. JUSTICES ADAIR, JOHN C. HARRISON, CASTLES and DOYLE concur.