STATE, APPELLANT, *v.* KINDLE ET AL., RESPONDENTS.

(No. 5,489.)

(Submitted May 28, 1924. Decided June 21, 1924.)

[227 Pac. 65.]

*Criminal Law—Homicide — Corpus Delicti — Essentials — Evidence—Sufficiency—Confessions—Admissibility.*

Criminal Law—*Corpus Delicti*—Essentials.
　1.　The term *"corpus delicti,"* when applied to any particular offense, means that the specific crime charged has actually been committed by someone, and is made up of two elements—(1) that a certain result has been produced, and (2) that someone is criminally responsible for the result.

Murder—*Corpus Delicti*—Proof.
　2.　Under section 10962, Revised Codes of 1921, the only fact required to be proved directly to establish the *corpus delicti* in a murder case is the death of the person alleged to have been killed, but the identity of such person, if in doubt, and the fact that defendant did the killing may be proved by direct, or by indirect or circumstantial evidence.

Same—Conviction Unwarranted.
　3.　Where the evidence in a homicide case is fairly susceptible of the construction that death of deceased was accidental, or the result of

Proof of *corpus delicti* in homicide, see note in 68 L. R. A. 35.

suicide, or due to a natural cause, it is insufficient to warrant conviction.

Same—Proof of *Corpus Delicti* Held Established to Render Admissible Confession of Accused.

4. Where in a prosecution for murder there was not a fact or circumstance in the state's case indicating that decedent's death was the result of other than criminal agency, refusal to permit the sheriff to testify that defendant had stated to him that he had done the killing, based on the ground that the *corpus delicti* had not been established, was error.

Same—Voluntary Confession Admissible in Evidence.

5. Where the record in a prosecution for homicide is silent as to any inducement having been held out to defendant for making a confession, but it appears, on the contrary, that he talked voluntarily, freely and eagerly to the arresting officer, it is error to refuse admission of the statement in evidence.

*Appeal from District Court, Phillips County: C. D. Borton, Judge.*

Simeon E. Kindle and W. Edwin Kindle were charged with murder. From a judgment of not guilty rendered on a directed verdict, the state appeals. Reversed and remanded, with directions to grant a new trial.

*Mr. Wellington D. Rankin,* Attorney General, and *Mr. L. A. Foot,* Assistant Attorney General, for Appellant, submitted a brief; *Mr. L. V. Ketter,* Assistant Attorney General, argued the cause orally.

Citing: Wharton's Criminal Evidence, 10th ed., sec. 325; *Buel* v. *State,* 104 Wis. 132, 80 N. W. 78; *Melcik* v. *State,* 35 Tex. Cr. Rep. 14, 24 S. W. 417.

*Messrs. Tressler & Kirton,* for Respondents, submitted a brief; *Mr. H. C. Hall,* of Counsel, argued the cause orally.

It is elementary that before statements of the accused in the nature of confessions or admissions are admissible in evidence, the fact that a crime has been committed must be established independently of such statements or admissions. (*Choate* v. *State,* 12 Okl. Cr. 560, 160 Pac. 34; *People* v. *Simonsen,* 107 Cal. 345, 40 Pac. 440; *People* v. *DeMartini,* 50 Cal. App. 109, 194 Pac. 506; *Frazier* v. *United States,* 2 Okl. Cr. 657, 103 Pac.

373; *Sullivan* v. *State*, 58 Neb. 796, 79 N. W. 721; *People* v. *Kirby*, 223 Mich. 440, 194 N. W. 142; *Ashby* v. *State*, 124 Tenn. 684, 139 S. W. 872; *Gray* v. *Commonwealth*, 101 Pa. St. 380.)

Likewise it is the established rule that confessions, or extra-judicial admissions of a defendant charged with crime, cannot be considered for the purpose of showing the *corpus delicti* or of proving the elements necessary to constitute the crime with which he is charged. (*People* v. *Rowland*, 106 Cal. 428; *People* v. *Vertrees*, 169 Cal. 404, 146 Pac. 890; *People* v. *Tapia*, 131 Cal. 647, 63 Pac. 1001; *People* v. *Frank*, 2 Cal. App. 283, 83 Pac. 578.)

The rule in this state relative to the *quantum* of proof necessary to establish the *corpus delicti* is clearly set forth by Mr. Justice Galen in *State* v. *Riggs*, 61 Mont. 25, 201 Pac. 672. (See, also, *State* v. *Calder*, 23 Mont. 504, 59 Pac. 903; *State* v. *Nordall*, 38 Mont. 327, 99 Pac. 960; *State* v. *Pepo*, 23 Mont. 473, 59 Pac. 721; *Dreesen* v. *State*, 38 Neb. 375, 56 N. W. 1024; *People* v. *Ahrling*, 279 Ill. 70, 116 N. E. 764.)

MR. CHIEF JUSTICE CALLAWAY delivered the opinion of the court.

By information Simeon E. Kindle and W. Edwin Kindle were charged with the murder of Gilbert Gilbertson. The case is here upon the state's appeal as the result of a verdict of not guilty returned by the court's direction. The main question presented is whether upon the trial the state proved the *corpus delicti.*

While the record is obscure in places, the following facts are [1] pretty clear: Gilbertson and the defendants occupied adjoining ranches. A fence running east and west was the southern boundary of the Gilbertson ranch and the northern boundary of a portion of the Kindle ranch. On the morning of April 4, 1923, Gilbertson had in his hands what Mrs. Gilbertson termed a grub hoe, saying he was going to the east fence. This, it would seem, is not the east and west fence above referred to. About 1 o'clock Gilbertson not having returned, his wife went to a hill near by, from which a view of the coun-

try could be had, to look for him. While there she heard a shot. She then walked rapidly 160 steps to a cross-fence. At that point she observed distant three-quarters of a mile in the Gilbertson field a man, not her husband, with a dog. As she stood at this fence she heard two shots which must have been fired within a short interval as she illustrated the time which elapsed between them by clapping her hands. Following these shots she saw "another man come from the northeast coulee draw." Here the record is somewhat obscure but it is to the effect that she saw the two men go to the spot where Gilbertson's body was found; after which "one of them went home." Mrs. Gilbertson then returned to the Gilbertson house and ascertained that her husband's rifle was not there. She put on her coat and went to the east fence, about a mile distant. Not finding her husband there she evidently started to go to the southerly part of the ranch by way of a coulee; she again saw the man with the dog; this time they were in Kindle's field. She testified that every time she would go down the coulee in a southerly direction the man in Kindle's field would come north toward her. When she would retreat he would also. This happened two or three times. She then returned to her house, where she remained until the sheriff and his party came. She did not know of her husband's death at that time. Another witness heard the three shots.

News of the shooting having reached Malta, the county seat, the sheriff, county attorney and others left for the scene. On the way they met Fred Kindle, a brother of the defendants, driving a Ford automobile. Where Fred Kindle was going does not appear, but when the sheriff reached the scene of the shooting Fred Kindle was there with the defendants. After leaving Fred Kindle the sheriff went to the Gilbertson house and from there to the east side of the ranch. Upon arriving there the sheriff observed three men on a hill who proved to be the defendants and Fred Kindle. Of them he inquired as to the whereabouts of Gilbertson, whose body was not then in sight. One of the defendants, Edwin, according to the sheriff's recollection, answered, and as a result of the conversation the

[71 Mont. 58.]

party went toward the body, northwest about 100 feet. The body was lying in the decedent's own field 85 feet north of his south (the east and west) fence. Gilbertson was lying on his back, arms and legs outstretched, his head to the south. He had been shot through the head. The bullet entered directly between the eyes; there the skin was torn evenly, while at the point of exit directly in the back of the head "the skin was irregular and pushed out." The physician who examined the body did not observe any powder burns. There was not a gun or weapon of any kind near the body. On the contrary, Gilbertson's rifle and also a Springfield rifle belonging to Edwin Kindle were found in the possession of the defendants. The gun belonging to the deceased did not have either a cartridge or a shell in the barrel. There was a shell in the magazine, but the sheriff was unable to extract that as it was lodged. In the barrel of the Kindle gun there was an empty shell.

After viewing the body, at the suggestion of the defendants the sheriff went to the fence and then to the edge of a coulee near by. The fence was found to be cut in several places. A pair of nippers was found there. The "Kindle boys" mentioned the fact that the fence was cut. About 100 yards distant the sheriff found the grub hoe, called by him an "adz," with the handle broken. The sheriff searched for cartridges or shells; he "went down to the edge of this coulee and followed around the point of the hill up around this way and down to where the body was (indicating on the map)," accompanied by the county attorney, a Mr. Mills, and the three Kindle boys. A question as to whether he made the trip at the suggestion of "the Kindles" was objected to and the objection sustained. The sheriff was asked whether he learned the cause of Gilbertson's death, to which he answered: "Yes, sir. Q. From whom? A. Edwin Kindle. Q. And what did he give as the cause of his death?" This was objected to, the objection being that the state had failed to prove the *corpus delicti.* The court thought the objection well taken. Thereupon counsel for the state offered to prove by the testimony of Mr. Wolfe, the sheriff, the substance of a conversation between himself and Ed-

win Kindle in which the latter said he had shot Gilbertson, and in which the circumstances of the affray were described at some length. Further: ''That upon approaching the defendants there at or near the place where the body was found and a little way from it, he asked one of the defendants where Gilbertson was and he replied: 'He is damned easy found now; he is right over the hill there.' That the witness asked him what happened, to which he replied: 'I killed him; it was either get killed or kill him.' That, when the witness and the defendants got in sight of the body Mrs. Gilbertson had run down to the body and was crying, and one of the defendants said: 'Look at the damned old sow, how she is carrying on now. She knew that was going to happen, just as well as he did. She knew what he came out here for; knew there was going to be trouble.' That while there a man by the name of Andy Anderson came up, and one of the defendants stated, in the presence of the other and in the presence of the witness, to Andy Anderson, 'You knew this was going to happen, Andy.' ''

The offer was denied, the court holding that the *corpus delicti* must be proved before the prosecution may give in evidence any statement of the defendants. Commenting on the situation, the court remarked: ''There is only one question: As to whether there can be an inference drawn from the testimony so far, as to whether there was a criminal agency. I am frank to say to you until *State* v. *Riggs* was announced you had abundant testimony here for a *corpus delicti*.'' The learned judge was of the opinion that this court, in *State* v. *Riggs*, 61 Mont. 25, 201 Pac. 272, had laid down a more stringent rule respecting proof of the *corpus delicti* than had been indicated in some of its earlier decisions.

Generally speaking, the term ''*corpus delicti*,'' when applied [1] to any particular offense means that the specific crime charged has actually been committed by someone, and it is made up of two elements: First, that a certain result has been produced, as that a man has died; second, that someone is criminally responsible for the result, as for the death. (7 R. C. L. 774.)

Section 10962, Revised Codes of 1921, reads as follows: "No
[2]   person can be convicted of murder or manslaughter un-
less the death of the person, alleged to have been killed, and
the fact of the killing by the defendant as alleged, are estab-
lished as independent acts; the former by direct proof, and the
latter beyond a reasonable doubt."

In a prosecution for murder proof of the *corpus delicti* does
not necessarily carry with it the identity of the slain nor of the
slayer.   Under the statute the only fact required to be proved
directly is the death of the person alleged to have been
killed.   The identity of such person, if in doubt, and of
the killing by the defendant, may be proved by direct or
by indirect or circumstantial evidence. (*State* v. *Pepo*, 23
Mont. 473, 59 Pac. 721; *State* v. *Calder*, 23 Mont. 504, 59 Pac.
903; *State* v. *Nordall*, 38 Mont. 327, 99 Pac. 960.)   The *Riggs
Case* is to the same effect.   To sustain the charge against the
defendants it was, of course, necessary for the state to prove
that the crime charged had been committed and the defendants,
or one of them, committed it.   In such case a mere showing of the
fact of death is not sufficient; it must appear also that it came
about through criminal agency.   As said in the *Riggs Case*,
in order to sustain a conviction proof of the criminal agency is as
indispensable as the proof of death.   But no universal and inva-
riable rule can be laid down as to what will amount to proof of
criminal agency, as each case must depend upon its own peculiar
circumstances; and when there is any evidence, direct, indirect or
circumstantial, tending to prove the fact, it is for the jury to
pass upon its sufficiency.   If however, the evidence is fairly
[3]   susceptible to the construction that death was accidental,
or the result of suicide, or due to a natural cause, then it is
not sufficient to warrant a conviction, for the reason that in
order to convict a defendant he must be proven guilty of the
crime charged beyond a reasonable doubt.   He cannot be con-
victed when the evidence is fairly susceptible to a construction
which will prove innocence as well as guilt.   The *Riggs Case*
did not attempt to, nor did it, go any further than this.

There was not a fact or circumstance indicating that Gilbert-
[4]   son's death was the result of other than criminal agency.

Suicide was out of the question. If he met death through accident, surely it was not of his own causing.

The proffered testimony should have been admitted. But counsel for defendants say if the testimony had been admitted it would have proven that Edwin Kindle in shooting the deceased acted in self-defense. Possibly a jury would have come, to that conclusion; but by its action in excluding the proffered testimony the court precluded the state from developing its case, and we may not assume that it did not have other testimony tending to show the guilt not only of Edwin Kindle but of Simeon. Discrepancies appear reflecting upon Edwin Kindle's story, even upon the evidence admitted and that offered. It is urged, too, that the testimony adduced and offered does not connect Simeon Kindle with the alleged crime. But Edwin and Simeon were on trial jointly. The action of their counsel contributed to the error into which the court fell, as a result of which the state was unable to make out its case. In view of this situation and until further proceeding Simeon's position will be held to be identical with Edwin's.

Counsel for defendants also suggests that the state should not [5] have been permitted to introduce the proffered testimony for the reason that it consists of a confession of Edwin Kindle, and there was no preliminary proof that it was made voluntarily. Whether it consists of a confession or an admission the record does not indicate that any inducement was held out to cause Kindle to make it; on the contrary, it appears that he talked voluntarily, freely, even eagerly. There does not seem to be any merit in the objection. (*State* v. *Guie,* 56 Mont. 485, 186 Pac. 329; *State* v. *Stevens,* 60 Mont. 390, 199 Pac. 256.)

The judgment is reversed and the cause is remanded to the district court of Phillips county, with directions to grant a new trial.

*Reversed and remanded.*

ASSOCIATE JUSTICES HOLLOWAY, GALEN and STARK concur.

MR. JUSTICE COOPER, being absent, did not hear the argument and takes no part in the foregoing decision.