No. 83-267

IN THE SUPREME COURT OF THE STATE OF MONTANA

1984

_____

STATE OF MONTANA,

        Plaintiff and Respondent,

  -vs-

JAMES ANDREW BRADFORD and
DAVID ALLEN OPPELT,

        Defendant and Appellant.

_____

APPEAL FROM: The District Court of the Eighth Judicial District,
In and for the County of Cascade,
The Honorable H. William Coder, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

           Marcia Birkenbuel argued for Oppelt, Great Falls,
Montana

      For Respondent:

           Hon. Mike Greely, Attorney General, Helena, Montana
Dorothy McCarter argued, Asst. Atty. General, Helena
J. Fred Bourdeau, County Attorney, Great Falls, Montana

_____

              Submitted:   February 28, 1984

                Decided:   May 24, 1984

Filed:   MAY 24 1984

_____
              Clerk

Mr. Justice L. C. Gulbrandson delivered the Opinion of the Court.

James Andrew Bradford and David Allen Oppelt were convicted of criminal mischief, criminal trespass to vehicles, attempt, and felony theft by a jury in the District Court of the Eighth Judicial District, Cascade County. Only defendant Oppelt appeals his conviction. We affirm.

At approximately 5:00 a.m. on August 9, 1982, the night clerk at the Heritage Inn in Great Falls received a phone call from a guest who had just observed two persons breaking into a vehicle located on the Inn's parking lot. The clerk immediately notified Roy Cisneros, a private security guard employed by the Inn, and the two men went to Cisneros' truck and drove around the hotel to the southwest parking lot. Cisneros parked the truck and both he and the clerk approached the area just outside the room of the guest who had reported the break-in.

Cisneros and the clerk observed a man later identified as Robert Ruiz standing next to a vehicle in the lot. They approached Ruiz and questioned him about his presence in the lot. Ruiz told them that he was preparing to jog, and was waiting for a friend to join him. Cisneros was suspicious, and asked Ruiz to position himself for a pat-down search. In the course of that search, Cisneros discovered a .22 caliber semiautomatic pistol in Ruiz's front waistband, and removed it. At that point, Cisneros observed a second individual, later identified as James Andrew Bradford, lying under a vehicle approximately forty-five feet away. Bradford apparently realized that Cisneros had seen him, and

-2-

tried to roll away.

Cisneros asked the clerk to hold Ruiz while he went after Bradford. He told Bradford to stop. Bradford then began to reach for his back pocket. Cisneros gave a second command to stop, and unsnapped the holster to his service weapon. Bradford froze, and Cisneros approached him, ordering him to assume the position for a pat-down. In the frisk, Cisneros seized a five inch hunting knife and scabbard from Bradford's back pocket. He placed Bradford in handcuffs, and took him back to the area where the clerk was holding Ruiz.

Cisneros called his dispatcher for assistance. A few minutes later he noticed a third individual, later identified as the appellant, David Allen Oppelt, inside the glass-enclosed section of the Inn, about to come down the stairway leading to the parking lot. (The guest who made the phone call testified at trial that he had seen a third man in the parking lot during the break-in. This third man, who apparently disappeared before Cisneros and the clerk arrived on the scene, had a physical appearance matching Oppelt's.) Oppelt was coming down the steps until both he and Cisneros established mutual eye contact. At this point, Oppelt turned and proceeded to run back up the stairs. Cisneros instructed the clerk to follow Oppelt and ask him to come to the parking lot for questioning.

The clerk followed Oppelt up the stairs and down the hallways of the Inn. Oppelt was either running or taking long strides down the hallways. After Oppelt had traversed a distance of about two city blocks, the clerk caught up with Oppelt and told him that Cisneros wanted to question

-3-

him. Oppelt voluntarily accompanied the clerk back to the lot where Cisneros was waiting.

As Oppelt approached, Cisneros asked him if he had any identification, and Oppelt responded that he had none. Cisneros noticed that the left front pocket of Oppelt's brown vinyl jacket was "full" and "bulged to the side." Concerned that Oppelt might be armed, Cisneros told him to place his hands on a nearby vehicle so that Cisneros could conduct a search. Oppelt said, "no," but Cisneros repeated his order to have him place his hands on the vehicle. At this point Oppelt complied and Cisneros patted him down to see if he had a knife or other weapon. Cisneros discovered that the bulge was created by several coins, tie tacks, and pieces of jewelry. Cisneros handcuffed Oppelt and notified police to come and make an arrest.

When the police arrived to arrest Ruiz, Bradford and Oppelt, they also looked into the vehicle that the hotel guest had seen the suspects looking into prior to the investigation by Cisneros and the clerk. Officer Wayne Doeden of the Great Falls Police Department observed that the wing window had been entered and the glove box had been opened. Various items from the box had been spilled on the floor of the car. When looking up and away from the car, Doeden saw another vehicle which he had seen Oppelt in previously. Doeden looked in this car as well, and spotted in plain view a knife, tools and what appeared to be either a holster or a handgun on the car floor. The vehicle was impounded and a search warrant was obtained. Officers discovered a watch, a ring, several guns and knives, jewelry and a mobile phone. These items were eventually identified

-4-

as property stolen from several parked cars in the lots of the Village Motor Inn and the Holiday Inn, both in Great Falls. Most of the victims of these robberies lived out of state.

Investigators also found wallets belonging to Bradford and Oppelt in the impounded vehicle. The auto was registered in the name of Oppelt's half-sister. An investigation was also authorized for the first vehicle, in which police lifted fingerprints matching those of Bradford.

On August 19, 1982, Bradford and Oppelt were charged with three counts of criminal trespass to vehicles, two counts of felony theft, two counts of misdemeanor theft, and one count of felony criminal mischief. Both men, represented by separate counsel, plead not guilty to all counts. Ruiz, a juvenile, was apparently not charged. Oppelt moved to dismiss six of the eight counts against him, and to suppress the evidence seized from his person during the pat-down search, alleging that his right to privacy had been violated by the search. After a hearing and upon submission of briefs, the trial court denied the motion. Judge Coder concluded that, while Cisneros' actions had to be measured against constitutional standards, there was nothing to suggest that Oppelt had been under a full custodial arrest or that he had been the victim of an unreasonable search.

In the meantime, the State had given notice that it was preparing to file an amended information and supporting affidavit. The new information revised the charges against both Bradford and Oppelt. They were now charged with five

counts of misdemeanor criminal trespass to vehicles, one consolidated count of felony theft, one of attempt, and one of felony criminal mischief. The parties went to trial on these charges.

At the conclusion of the State's case-in-chief, Oppelt's attorney moved to dismiss the charges against him. The motion was denied. The court did dismiss, without objection by the State, one charge of criminal trespass to vehicles. The court also reduced the felony criminal mischief charge to a misdemeanor, again without objection by the State. The other charges were allowed to stand.

The defendants' case revolved almost exclusively around an alibi defense supplied by Robert Ruiz. Ruiz insisted that he alone was responsible for the thefts, and that Bradford and Oppelt had been called around 5 a.m. to come to the Heritage Inn and help him start his stalled car. Ruiz had no explanation for Oppelt's presence in the hotel.

The jury returned guilty verdicts on all charges. Oppelt was sentenced to twenty years in prison and was designated a persistent felony offender. Bradford received a similar sentence, but he has not appealed his conviction.

Oppelt raises the following issues:

(1) Whether the trial court erred in denying Oppelt's motion to suppress evidence seized from his person by a private security guard in a "stop-and-frisk" during an investigation of possible trespass and theft on hotel property patrolled by the security guard?

(2) Whether the amended information charging Oppelt with criminal trespass to vehicles, criminal mischief, attempt and felony theft was supported by a showing of

Hon. L. C. Gulbrandson
Justice, Supreme Court
Room 436 Justice Bldg.
215 North Sanders
Helena, Montana  59620



<u>CORRECTION.</u> In preparing this opinion for publication, we noted in our verification of titles and citations the matters listed below. Corrections have been made on our copy of the opinion.

August 2, 1984

State v. Bradford, No. 83-267, May 24, 1984

Page 7, line 12 - - Duran v. Buttrey <u>Foods,</u> Inc. should read Duran v. Buttrey <u>Food,</u> Inc.



WEST PUBLISHING COMPANY
Box 3526
St. Paul, MN 55165

probable cause in the State's affidavit?

(3) Whether the trial court erred in denying Oppelt's motion to dismiss charges against him at the close of the State's case, and whether there was sufficient evidence to instruct the jury on accountability and common scheme?

I

The gist of Oppelt's argument on the first issue is that the constitutional right to privacy, Mont. Const. art. II, sec. 10, as construed in this Court's decisions in State v. Van Haele (Mont. 1982), 649 P.2d 1311, 39 St.Rep. 1586; State v. Hyem (Mont. 1981), 630 P.2d 202, 38 St.Rep. 891; Duran v. Buttrey Foods, Inc. (Mont. 1980), 616 P.2d 327, 37 St.Rep. 1545; State v. Helfrich (1979), 183 Mont. 484, 600 P.2d 816; and State v. Coburn (1974), 165 Mont. 488, 530 P.2d 442, bars the kind of stop and search involved in his case, therefore mandating suppression of the evidence seized from his person.

This is the first time that a stop-and-frisk operation by a private security guard in Montana has been challenged. The search and seizure involved here is very similar to the one held lawful for police to perform. See Terry v. Ohio (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889. Oppelt maintains that the issue of whether a Terry stop-and-frisk can be conducted by a private security guard must be settled by reference to this Court's line of cases extending the protections of the exclusionary rule to private searches. We disagree. Regardless of any argument supporting the possible relevance of our earlier decisions respecting

-7-

private searches, we hold that a private security guard may conduct the kind of "stop-and-frisk" involved in the instant case during an investigation of possible trespass and theft on property patrolled and protected by the security guard.

In the immediate case, the search of Oppelt is justified as action taken to protect the hotel and its occupants against trespassers in the process of committing an offense. A person has a right to use "any necessary force" to protect himself or his employer, or his or her employer's property, from wrongful injury. Section 49-1-103, MCA. See also Mont. Const. art II, sec. 3 (constitutional right to protect self and property); Section 45-3-102, MCA (authorization to use reasonable force to defend self); Section 45-3-104, MCA (authorization to use reasonable force to defend property). A reasonable construction of these constitutional and statutory provisions compels the conclusion that Cisneros had legal authority to protect the hotel property, to investigate the circumstances surrounding Oppelt's presence there, and to use "reasonable force" to protect himself during the course of his investigation. "Reasonable force" under the facts of this case includes the right of the security guard to conduct a Terry "stop-and-frisk."

Oppelt responds that Cisneros did not have "probable cause" to believe that he was trespassing or committing some other offense, so as to justify the search. "Probable case" is not the correct standard. All Cisneros needed to have was a "reasonable suspicion" that something illegal was taking place and that Oppelt might be armed. Given that he had just seized two armed individuals lurking around a hotel

parking lot at five o'clock in the morning, and that Oppelt was heading toward the lot until he saw Cisneros, the night clerk, and the two detainees, after which time he turned and walked or ran in the opposite direction, and that Oppelt's jacket pocket bulged to the side, we find that Cisneros had a reasonable suspicion to investigate Oppelt's presence and conduct a pat-down search for weapons.

## II

Oppelt's challenge to the amended information and supporting affidavit appears to flow from a narrow conception of probable cause. Whether this conception is justified depends on the nature of the facts cited in the affidavit in support of the information and case law construing the scope of probable cause.

Oppelt challenges the criminal trespass charges on the grounds that the various stolen items do not link him to the crimes. His theory is that there is no proof that he entered the vehicles, even if his co-defendant, Bradford, or the juvenile, Ruiz, did so enter. He further challenges the felony theft charge on the grounds that most of the items were not "connected" to his presence at the hotel when he was seized. The remaining items were allegedly not valued, thus making proof of a felony theft impossible. Similarly, Oppelt insists that the attempt and criminal mischief charges are tied to damage to a mobile telephone in one vehicle and that there is no necessary connection between him and the vehicle.

An affidavit in support of a motion to file an

information need not make out a prima facie case that a defendant committed an offense. A mere probability that he committed the offense is sufficient. Similarly, evidence to establish probable cause need not be as complete as the evidence necessary to establish guilt. See State v. Hamilton (1980), 185 Mont. 522, 605 P.2d 1121, cert. den. 447 U.S. 924, 100 S.Ct. 3017, 65 L.Ed.2d 1117. In State v. Riley (Mont. 1982), 649 P.2d 1273, 39 St.Rep. 1491, this Court observed that the determination whether a motion to file an information is supported by probable cause is left to the sound discretion of the trial court. Thus, the scope of review is one of detecting abuse in the exercise of that discretion.

The first criminal trespass charge was connected to the fact that the items stolen from the first car were found on Oppelt's person during the search. This is clearly a basis for probable cause that Oppelt was in that vehicle. Although the remaining trespass charges involve evidence found in the suspect's car, but not on Oppelt's person, the State alleged in its affidavit that Oppelt and the other suspects had participated and assisted each other in a common criminal scheme. This Court has held that more than a mere presence at the scene of a crime is necessary to establish criminal responsibility. State v. Hammons (Mont. 1983), 664 P.2d 922, 40 St.Rep. 884. In the instant case, however, the State was able to establish Oppelt's presence, the stolen articles on his person, his unusual behavior, and his connection to the other suspects. At this stage of the criminal proceedings, this was all that was necessary for a valid showing of probable cause.

-10-

Oppelt cites State ex rel. Wilson v. District Court (1972), 159 Mont. 439, 498 P.2d 1217, in support of his argument that he cannot be charged without a more positive connection to the evidence. Although arguably close on some facts, Wilson is nevertheless distinguishable. In that case, the trial court found probable cause to link a suspect to a burglary of a beer distributer's business. The evidence, however, was found in a car belonging to another individual. Although that individual and the suspect had been charged with another burglary at a lumber yard, this Court held that this was not enough to establish probable cause on the beer theft. In the instant case, there is more evidence than the fact that Oppelt was arrested with Bradford and Ruiz. His suspicious behavior at the scene, the presence of his wallet in the impounded car with most of the stolen items, his identification with the car on a previous occasion, and his familial relationship to Bradford and Ruiz offer enough evidence to warrant a finding that Oppelt probably was a participant in a common scheme of thefts.

Probable cause for theft also was sufficiently established. The items found on Oppelt's person alone were reported to have a value of more than $150, clearly establishing sufficient grounds for a charge of felony theft. There was also a fair probability of attempt and criminal mischief shown on Oppelt's part, given the simultaneous presence of defendants at the crime scene and the evidence of other thefts.

From the facts and controlling case law, we conclude that the affidavit of probable cause is sound. The trial

-11-

court did not abuse its discretion in denying Oppelt's motion to dismiss.

Having failed to convince the trial court that the State lacked probable cause to charge Oppelt, defense counsel still had the opportunity to challenge the State's evidence at trial. The following discussion essentially summarizes the facts and issues developed during the trial.

A guest at the Heritage Inn testified that he had seen two individuals, later identified as Bradford and Ruiz, breaking into cars in the Inn's parking lot. He also had seen another individual walking around the cars. His testimony at trial indicated that the physical description of this third individual matched that of Oppelt. The security guard had apprehended Ruiz, who had been standing by a car, and then had retrieved Bradford, who had been hiding under another car and trying to roll away. The security guard had seen Oppelt inside the glass enclosure of the motel. After Oppelt had spotted the guard with Ruiz and Bradford, he had withdrawn in the opposite direction. After Oppelt had been apprehended and patted down, his pockets were found to contain what were believed to be stolen articles. Indeed, these articles had been taken that same night from a vehicle parked at the Holiday Inn. Four vehicles in two motel parking lots had been forcibly entered and various items had been stolen from three of the cars. Most of the items were found in an automobile parked at the Heritage Inn. This car was registered to Oppelt's

sister-in-law, and Oppelt had been observed using the car on a previous occasion. The car also contained wallets belonging to Bradford and Oppelt. It was established that Oppelt, Bradford and Ruiz are related. There was testimony even from defense witnesses that Bradford and Oppelt were together during the time of the break-ins. Defendant Bradford's fingerprints had been found in one of the burglarized vehicles. The record also discloses that the break-ins had been similar in all significant aspects and followed one another, evidencing a continuing criminal design: they had taken place the same night and early morning at motels in Great Falls, the vehicles had been forced open through the wing windows, and items had been taken, with firearms having been removed from at least two vehicles. All the vehicles were from out of town, and the items stolen were either on the three suspects or in the car that was used by Ruiz and Oppelt at different times.

Proof of common scheme as defined in Section 45-2-101(7), MCA, requires a showing of "a series of acts or omissions motivated by a purpose to accomplish a single criminal objective or by a common purpose or plan which results in the repeated commission of the same offense or affects the same person or the same persons or the property thereof." Criminal accountability for conduct of another is established if there is evidence of the party's aiding or abetting the criminal act, or of agreeing or attempting to aid the other in the planning or commission of the offense. See Section 45-2-302(3), MCA. Although mere presence at the scene of a crime is not enough to establish accountability, the accused need not take an active part in any overt

-13-

criminal acts to be adjudged criminally liable for the acts. State v. Hart (Mont. 1981), 625 P.2d 21, 38 St.Rep. 133.

The evidence set forth above tends to support both common scheme and accountability. Oppelt urges this Court to focus only upon three facts: (1) that he was arrested at the hotel; (2) that stolen items were found on his person; (3) that his wallet was found in the impounded vehicle along with several stolen items. Although these three facts alone warrant serious suspicion about Oppelt's conduct, they do not comprise the complete series of events. When considered with the similar pattern of break-ins involving several cars, Oppelt's unusual behavior the night of the thefts, his relationship to Bradford and Ruiz, and the discovery of Bradford's fingerprints, it can be said that there was sufficient evidence to go to the jury on the question of Oppelt's involvement in a common scheme of thefts. The same evidence warrants a reasonable inference that, even if he had not broken into any or all of the vehicles himself, he was a partner in the commission of those offenses. Under the circumstances, the instructions on common scheme and accountability were proper.

The orders denying Oppelt's motion to suppress evidence, denying his motion to dismiss the amended information, and denying his motion to dismiss charges following presentation of the State's case are affirmed. The convictions on the aforementioned charges of criminal mischief, criminal trespass to vehicles, attempt, and felony theft are likewise affirmed.

_____
Justice

-14-

We concur:

_____
Chief Justice

_____

_____

_____

_____

_____
Justice

-15-