No. 92-463

IN THE SUPREME COURT OF THE STATE OF MONTANA

1993

STATE OF MONTANA,

       Plaintiff and Respondent,

-v-

OWEN W. ARRINGTON, JR.,

       Defendant and Appellant.

APPEAL FROM: District Court of the Eighteenth Judicial District,
In and for the County of Gallatin,
The Honorable Thomas A. Olson, Judge presiding.

COUNSEL OF RECORD:

       For Appellant:

              J. Robert Planalp, Landoe, Brown, Planalp &
Braaksma, Bozeman, Montana; Larry Jent, Williams,
Jent & Cockins, Bozeman, Montana

       For Respondent:

              Hon. Joseph P. Mazurek, Attorney General, Cregg W.
Coughlin, Assistant Attorney General, Helena,
Montana; Mike Salvagni, Gallatin County Attorney,
Bozeman, Montana

FILED

Submitted on Briefs: June 10, 1993

Decided: August 10, 1993

Filed: AUG 10 1993

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

Clerk

Justice James C. Nelson delivered the Opinion of the Court.

This is an appeal from an Eighteenth Judicial District Court, Gallatin County, jury verdict in a negligent homicide action. We affirm.

We restate the issues on appeal:

I. Did the trial court err in denying the defendant's motion to dismiss?

A. May the trial court consider the defendant's statements in determining probable cause to file an information?

B. Was the state's affidavit sufficient to support probable cause to file an information?

II. Was there sufficient evidence to support the jury's verdict of guilty?

III. Did the trial court properly instruct the jury on the issues of causation and negligence?

IV. Should the testimony of the highway patrol officer have been excluded?

The defendant met a friend, Frank Ahrendes, at Frank's place of business on the afternoon of August 8, 1991. The men visited for a while and then proceeded to Little John's, a Bozeman tavern for a couple drinks. They stayed there for approximately one hour, each having two tall "mist" drinks. Then the defendant drove Frank home where the two visited briefly.

At about 6:30, the defendant arrived alone at Willie's Saloon, also in Bozeman. The bar owner served the defendant ice water and

2

informed him that his wife had called. He called his wife from the bar owners's private office and when he had finished the call, asked for another ice water. The bar owner stated that the defendant stayed at the bar until about 9:00, playing keno and drinking two drinks. The defendant left the bar and proceeded to the interstate going east to his home outside of Livingston.

Carol Dearinger and her husband, Laurence Dearinger were on a motorcycle trip through Montana. They stopped in Bozeman at about 8:30 p.m. on the evening of August 8, 1991, to find a place to spend the night, but they could not find a vacancy. They drove through the city and eventually departed on the eastbound interstate. As they headed out of town, Mrs. Dearinger thought she might get cold so she asked her husband to pull over so she could retrieve her coat from the trailer the motorcycle was pulling.

She stated that her husband pulled over onto the shoulder of the road, as far as he could, without going into the ditch, and he got off the motorcycle. He proceeded to the trailer, and removed her jacket, returned to the left side of the motorcycle and handed her the jacket. He then turned and started back to the trailer. He had walked about 3 to 4 feet when Mrs. Dearinger heard "a loud crash and a swish, and the motorcycle was laying over on its side."

Mrs. Dearinger stated that she looked around, did not see anyone, so ran to the front of the motorcycle and saw her husband lying on the ground between the motorcycle and the fogline. She tried to flag down some passers by for assistance. Soon, people arrived and lent what assistance they could in terms of comforting

3

Mrs. Dearinger and conducting first aid upon Mr. Dearinger.

Tim Del Camp, the first witness on the scene, stated that Mr. Dearinger's leg was almost completely severed and his chest was deformed and disfigured. He was able to get a rapid pulse when he first came to Mr. Dearinger's aid but later was unable to find a pulse. A woman who arrived later knew first aid and was able to get a pulse in his neck. The bystanders continued to render what aid they could until officials arrived.

Meanwhile, another woman who had arrived on the accident scene shortly after Del Camp, became ill upon seeing Mr. Dearinger and walked away from the accident scene. She saw a man standing away from the accident and asked him if he knew what happened. He stated, "I hit him. I didn't see him. I hit him." She described his clothes as a white shirt and blue pants. She said he smelled of alcoholic beverages and had glassy eyes. Shortly after she spoke with him, he walked away toward a vehicle parked eastbound of the accident.

The deputy coroner, the ambulance and the police arrived at the scene not long after bystanders had gathered. They surveyed the scene and examined the body. The deputy coroner and a deputy sheriff tried CPR for a short time but could not get any pressure back after putting breath into his body. A minute or two after starting CPR they covered the body, and the deputy coroner pronounced him dead.

Meanwhile, other police officers began questioning the bystanders to determine if there were any eyewitnesses to the

4

accident and they determined there were none. They also started to investigate the scene and gather evidence. Officer Carol Schumacher, a highway patrol officer, made a number of measurements, took photographs and used her evidence later to determine how the accident occurred.

Officer Schumacher took a photograph of a 1989 white Toyota Camry which was parked eastbound not far from the scene of the accident with its headlights on and keys in the ignition, though the car was not running. The car was parked "on the very outside edge of the traffic lane." The car was damaged on the right front side and was blood splattered.

Police officers started to look for the owner of the white car, searching for anyone on foot near the area of the accident. The police determined that the vehicle was registered and owned by Owen Arrington, Jr. After checking the vehicle registration, police Officer Bill Dove called Mrs. Arrington, the defendant's wife, to report that their car had been involved in an accident. She reported that her husband was in possession of the vehicle at that time although their daughter usually drove the Camry.

Mrs. Arrington telephoned her father-in-law and related the information from the police officer. Owen Arrington, Sr., then traveled to a number of places trying to find the defendant. Finally, sometime after 6:00 a.m., Mr. and Mrs. Arrington, Sr., found him near the Frontage Road heading toward Bozeman in an area south of the interstate.

The defendant told his father he had been in an accident but

5

he really did not know what had happened. Mr. Arrington, Sr. took his son to the police station where the defendant made a number of statements about the accident to Officer Dove, a City of Bozeman police officer.

The defendant was ultimately charged with negligent homicide and leaving the scene of an accident. At a jury trial in the Eighteenth Judicial District Court, Gallatin County, the defendant was found guilty. This appeal followed.

The standard of review for discretionary trial court rulings is whether there has been an abuse of discretion. Steer, Inc. v. Department of Revenue (1990), 245 Mont. 470, 475, 803 P.2d 601, 603-604.

## I. MOTION TO DISMISS

The defendant argues that the State's affidavit for leave to file an information fails to establish probable cause and his motion to dismiss should have been properly granted. Further, he contends that extrajudicial statements he made cannot be used to support a finding of probable cause. The State asserts that the trial court could properly consider the defendant's statements but even without his statements, the affidavit was supported by sufficient evidence.

## A. DEFENDANT'S STATEMENTS

The defendant cites § 45-5-111, MCA, for the proposition that "the State must prove each element, including in this case, the identity of the perpetrator, by evidence independent of any extrajudicial statement by the defendant." Section 45-5-111, MCA,

6

provides as follows:

> In a homicide trial, before an extrajudicial confession may be admitted into evidence, the state must introduce independent evidence tending to establish the death and the fact that the death was caused by a criminal agency.

Although this Court agrees that the State must prove each element of the offense, § 45-5-111, MCA, pertains to a homicide trial, not pre-trial processes. "In construing a statute, it is our function as an appellate court to ascertain and declare what in terms or in substance is contained in a statute and not insert what has been omitted." State v. Crane (1989), 240 Mont. 235, 238, 784 P.2d 901, 903. The statute merely prohibits admission of a defendant's confession at trial prior to the introduction of certain specified independent evidence; it does not relate in any way to use of the defendant's statements in establishing probable cause for leave to file an information.

Moreover, Montana case law confirms that the defendant's statements may be used in an affidavit to support the filing of an information. In State v. Hallam (1978), 175 Mont. 492, 499, 575 P.2d 55, 60, this Court concluded that an admission by the defendant that he set the fire, along with evidence that the fire was intentionally set, "was clearly sufficient to establish probable cause" to authorize leave to file an information. In the present case, there is far more independent evidence to support any admissions made by the defendant, including evidence that the car the defendant, who had been drinking, was known to have been driving was found at the scene and was damaged. We conclude that the defendant's statements may be included as evidence to support

7

probable cause for filing an information.

## B. SUFFICIENCY OF STATE AFFIDAVIT

Section 46-11-201, MCA, governs the filing of an information and provides in pertinent part:

(1) The prosecutor may apply directly to the district court for permission to file an information against a named defendant...
(2) An application must be by affidavit supported by evidence that the judge or chief justice may require. If it appears that there is probable cause to believe that an offense has been committed by the defendant, the judge or chief justice shall grant leave to file the information, otherwise the application is denied.

Montana case law defines the evidence sufficient to establish probable cause.

An affidavit in support of a motion to file an information need not make out a prima facie case that a defendant committed an offense. A mere probability that he committed the offense is sufficient. Similarly, evidence to establish probable cause need not be as complete as the evidence necessary to establish guilt....the determination whether a motion to file an information is supported by probable cause is left to the sound discretion of the trial court. Thus, the scope of review is one of detecting abuse in the exercise of that discretion.

State v. Bradford (1984), 210 Mont. 130, 139, 683 P.2d 924, 928-929. (Citation omitted.) See also State v. Buckingham (1989), 240 Mont. 252, 256, 783 P.2d 1331, 1334.

In the present case, even absent use of the defendant's statements as evidence to support probable cause, there is sufficient evidence to empower a judge to grant leave to file an information. There was evidence that the defendant was driving his family's white Toyota Camry and this vehicle was found near the scene of the accident. The affidavit stated that he had been

8

drinking before the accident. The defendant was found walking several miles east of the accident scene in an unsteady and disheveled condition. When he arrived at the police station, he was dressed in blue jeans, a white t-shirt and cowboy boots, which was similar to the description given by one of the witnesses who arrived shortly after the accident and observed a man loitering near the accident scene.

This evidence is more than enough to warrant the granting of leave to file an information and this evidence is only bolstered by the defendant's statements to various people concerning the accident. A man matching his description was seen at the accident and he stated that "I didn't see him, I didn't see him, I just hit him." A bystander smelled alcohol on his person and asked him, "you hit him sir?" and he said, "yes, but I didn't see him."

When the defendant's father found him, he told his father "that there had been an accident and that he could not remember about it." He further commented that he had a couple drinks with a friend early in the afternoon prior to the accident. He further explained that "'he knew that he had hit something and that he had seen a man by the motorcycle' and that 'from that point on he just lost it.'" He related to his father that he did not know why he did not remain at the scene but when he saw the victim, he became sick and disoriented.

When the defendant's father took him to the Bozeman police station, he made the following statements to a police officer:

> [T]o the best of my knowledge I was coming up out on approach, I pulled out, I was signalling to come out on

9

the interstate and there was you know, a lot of traffic, not really heavy, and I started down the interstate I wasn't going you know excessively fast, I think it was around 55, maybe 58 and cars were coming behind me and I was driving my daughter's car, which I'm not familiar with, and so I reached over to shut the air-conditioning off, and he was there, I mean, I just never seen [sic] the guy, I didn't, I was looking at the lights coming up behind me and looked at the air-conditioner or something, I just never seen [sic] him...

The defendant continued:

I didn't even know what I'd hit, I knew I'd hit something, so I pulled over, and parked but I couldn't even seen [sic] anything back there that I'd hit so I got out and ran back and a lady yelled, they were yelling for 911 up on the hill, and a lady got out and she said she was bringing a first aid kit and I got to the guy and there was [sic] other people there and I just, I just went berserk I started throwing up and the next thing I knew I was out in the middle of a field I was, I didn't know what the hell was going on anymore. I just, I lost everything, I just, I have no recollection why I left, I was there, and I just don't know, I have no explanation for it.

The sum total of all the evidence in the affidavit provides at least the "mere probability" that the defendant committed the offense. We conclude that the trial court did not abuse its discretion in finding the State's affidavit sufficient and denying the motion to dismiss.

## II. SUFFICIENCY OF EVIDENCE FOR JURY VERDICT

The defendant claims that the evidence presented was not sufficient to find him guilty. He also contends that the State did not properly identify the man at the scene of the accident, who stated that he hit the victim, as the defendant. The State counters that there was sufficient evidence to support the jury verdict. We agree with the State.

The standard of review regarding the sufficiency of the

10

evidence is "[whether,] after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." State v. Medina (1990), 245 Mont. 25, 33, 798 P.2d 1032, 1037.

The State provided the following evidence to support the defendant's guilt. A bartender from Little John's and the bar owner of Willie's Saloon stated that the defendant was served alcoholic beverages on the evening of the accident. A friend of the defendant's also testified to drinking with the defendant late in the afternoon on the day of the accident and being driven to his home by the defendant in a 1989 white Toyota Camry.

Testimony showed that this vehicle was found near the scene of the accident in which the decedent, Laurence Dearinger, was killed. The vehicle was owned and driven by the defendant on that evening. The car had sustained damage to the right front end and was blood splattered. One of the vehicle's side mirrors had broken off and a similar side mirror had been found at the accident scene. When the vehicle was found, the lights were on and the key was in the ignition but the car was not running. Arrington could not be found until he was located wandering a hillside in the general area of the accident the next morning.

Testimony elicited the following statements made by the defendant. When the defendant was found by his father he told his father that he had been in an accident. He further stated that "I hit something, and I went back. I stopped and I went back and

11

there was a man lying beside the motorcycle." Also, he informed his father that when he saw the man lying on the ground, he became physically ill and had no recollection of what happened thereafter except that he found himself wandering near the area of a KOA campground.

When the defendant arrived at the police station, he reported to Officer Dove that he had been driving his daughter's vehicle about fifty-five to fifty-eight miles per hour onto the interstate "from the on-ramp at the east end of Bozeman, and that he was driving his daughter's vehicle which he was not very familiar with. And he had leaned over to shut off the air conditioning, and as he looked up he hit something and didn't realize what he had struck, continued up the road a short distance and pulled over." He further stated that he walked back to the accident scene, saw Mr. Dearinger and became ill. He said "I felt that I'd probably killed him, and I didn't know how many people I'd killed...."

When the defendant's statements and the evidence deduced from the several witnesses are viewed in their totality, there is sufficient evidence for any rational trier of fact to have found the essential elements of negligent homicide beyond a reasonable doubt.

The defendant, however, argues that the State "failed to prove the corpus delicti of the offense because it was unable to identify the defendant as the driver without [defendant's] statement." He contends that the trial court improperly admitted the defendant's statements before the corpus delicti of the negligent homicide was

12

established, citing § 45-5-111, MCA. Section 45-5-111, MCA, states that:

> **Extrajudicial confession - evidence of death.**
> In a homicide trial, before an extrajudicial confession may be admitted into evidence, the state must introduce independent evidence tending to establish the death and the fact that the death was caused by a criminal agency.

According to the statute, before an extrajudicial confession is admitted into evidence, the State is only required to introduce two elements--that there was a death and that the death was caused by a criminal agency. It does not require independent evidence of the identity of the perpetrator. As stated earlier, we will not insert into a statute, what has been omitted. Crane, 784 P.2d at 903.

Montana case law also supports the conclusion that the identity of the perpetrator is not an element of the corpus delicti. In State v. Kindle (1924), 71 Mont. 58, 64, 227 P. 65, 67, we stated that "[i]n a prosecution for murder, proof of the corpus delicti does not necessarily carry with it the identity of the slain nor of the slayer." Although this is a negligent homicide action rather than a deliberate homicide, the reasoning in Kindle still applies. The essential elements of the corpus delicti are, as stated in § 45-5-111, MCA, establishing the death and the fact that the death was caused by a criminal agency, nothing more.

Further, regarding § 45-5-111, MCA, in State v. Gould (1985), 216 Mont. 455, 470-471, 704 P.2d 20, 30, we concluded that:

> [t]here must be some independent evidence establishing the corpus delicti, but it need not of itself be sufficient beyond a reasonable doubt, as, once the independent evidence is given, the confession may be

13

considered with the facts and circumstances in evidence in determining whether the corpus delicti is established... [Emphasis provided.]

The evidence presented by various State witnesses, independent of the defendant's statements, is sufficient to establish the corpus delicti--that is to establish the death of the victim, and "the fact that the death was caused by a criminal agency." Section 45-5-111, MCA. Independent evidence establishes that the defendant was in possession of the vehicle which struck and killed the decedent and that he had several drinks before he drove onto the interstate on the evening of August 8. Further evidence showed he was straddling the fogline although there was sufficient light to see approximately 3/4 of a mile ahead. This evidence qualifies as "some independent evidence establishing the corpus delicti." Gould, 704 P.2d at 30. At that point, the defendant's statements may be considered with "the facts and circumstances in evidence" to determine whether the corpus delicti has been established. Gould, 704 P.2d at 30. We conclude that the evidence does sufficiently establish the corpus delicti of negligent homicide at issue here.

In conclusion, the defendant's statements, together with the evidence from other witnesses, were sufficient to support the jury verdict. The trial court did not abuse its discretion in determining the jury verdict was supported by substantial evidence.

### III. JURY INSTRUCTIONS

The defendant argues that the trial court failed to properly instruct the jury on the issues of causation and negligence. He contends that there should have been an instruction requiring the

14

jury to find that "[t]he defendant was driving under the influence of alcohol as defined in these instructions . . ." because an essential element (criminal negligence) was dependent upon intoxication.

However, intoxication is not an essential element of negligent homicide. Section 45-5-104(1), MCA, states that "[a] person commits the offense of negligent homicide if he negligently causes the death of another human being." The two elements of the crime include whether the defendant caused the death of the decedent and whether the defendant acted negligently.

Intoxication is merely one of the factors to be considered in determining whether the homicide was caused by the negligent actions of the actor. Also, a review of the information makes it clear that the State did not charge the defendant with driving under the influence, therefore an instruction regarding intoxication was not warranted.

We have previously stated what is necessary for proper jury instructions:

> At a minimum, the District Court must explain or define the crime for the jury. In determining whether the instructions did this, we are guided by certain settled principles. First, we must view the instructions as a whole, and we will find no error if the instructions as a whole fully and fairly instruct on the law applicable to the case.

State v. Lundblade (1981), 191 Mont. 526, 529, 625 P.2d 545, 548. (Citations omitted.) In the instant case, a review of the instructions indicates that the elements necessary to find negligent homicide were fully explained to the jury. In addition,

15

the jury was given a detailed definition of the degree of negligence required to find the defendant guilty of negligent homicide. No further instructions were required. The trial court properly instructed the jury in this action and did not abuse its discretion.

## IV. EXPERT TESTIMONY

The defendant contends that it was reversible error to exclude a report made by Officer Schumacher reconstructing the accident but then let her testify as to mathematical calculations contained in the report. He states that he was not informed at the time his counsel interviewed the officer that she would testify regarding accident reconstruction. He further argues that her testimony was speculative and without foundation and should have been excluded. The State asserts that the trial court did not abuse its discretion when it allowed Officer Schumacher to testify. Moreover, it maintains that error cannot be founded upon subjects not in the record.

### A. TESTIMONY FROM THE EXCLUDED REPORT

Officer Schumacher's report was properly excluded because it was not presented to the defendant within the proper discovery deadline. Her report included mathematical calculations regarding the point of impact and the speed of the defendant's vehicle. The trial court also determined that she could not testify concerning information contained in the calculations from the report. Upon review of the record, we determine that Officer Schumacher's testimony did not concern any information from the report's

16

mathematical calculations. She properly stayed within the limits set by the trial court.

The officer testified to the conditions at the time of the accident, such as amount of light. She used a diagram to assist the jury in visualizing the accident. She testified about the conclusions she had drawn from the measurements and data collected at the time of the accident, including her opinion of the relative positions of the car, the motorcycle and Mr. Dearinger at the point of impact. Finally, she opined that the defendant had ample opportunity to stop or in some way, avoid the accident. None of this testimony included the mathematical calculations she prepared for the excluded report. The officer could properly testify as to her conclusions if she had the proper qualifications as an expert.

## B. TESTIMONY CONCERNING ACCIDENT RECONSTRUCTION

The defendant contends that Officer Schumacher did not hold herself out as an expert in accident reconstruction when she was interviewed on April 3, 1992, and that her testimony at trial was a surprise. However, Officer Schumacher testified that she had always been in a position to testify concerning reconstruction of the accident but when she tried to provide her opinions at her interview with the defense on April 3, 1992, she was not given the opportunity to do so by the defendant's counsel. She also stated that she never said she was <u>not</u> going to reconstruct the accident but that she had not reconstructed the accident <u>at the time of the interview with defense counsel</u>.

We note that the defendant did not provide this Court with a

17

transcript of the April 3, 1992 interview of Officer Schumacher for our own examination. This Court is left to speculate as to why the defendant would argue that the officer's testimony went beyond the parameters of the interview and then fail to provide the necessary transcript of that interview for our review.

> Under the Montana Rules of Evidence, <u>the trial court is given wide latitude in determining whether to admit opinion testimony of investigative officers.</u> Leeway is allowed in such instances, and <u>provided that the cross examiner is given adequate opportunity to elicit any assumptions or facts underlying the expert's opinion</u>, the weight to be given the testimony is for the trier of fact to determine. [Emphasis supplied.]

Campbell v. Johnson (1991), 251 Mont. 12, 15-16, 823 P.2d 237, 239, citing Cline v. Durden (1990), 246 Mont. 154, 803 P.2d 1077.

### C. OFFICER SCHUMACHER'S QUALIFICATIONS

The defendant also asserts that the officer's testimony is speculative and without foundation. We disagree. There is no question that Officer Schumacher was well qualified to testify as an expert regarding traffic accidents. She spends approximately 1/4 to 1/3 of her job investigating accidents. She graduated from the highway patrol recruit academy in 1978 and has been an officer since 1979. She had additional training in 1985, 1986 and 1987 in on-scene accident investigation and technical accident investigation. In addition, she received 80 hours of training in accident reconstruction in 1989. She has personally investigated several hundred traffic accidents and testified in hundreds of traffic accident cases. She is well qualified to testify to accident investigations and to accident reconstruction. She has the training and experience to testify regarding her investigative

18

work and conclusions based upon her investigations.

Not only was the officer well qualified to testify regarding her reconstruction of the accident, the defendant was able to fully cross-examine her on her conclusions and she was listed as an expert on the State's witness list.

We conclude that the trial court did not abuse its discretion when it allowed Officer Schumacher to testify. She did not provide information from the excluded report nor did she testify concerning any area in which she did not have sufficient expertise.

AFFIRMED.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices

19

August 10, 1993

## CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:

J. Robert Planalp
LANDOE, BROWN, PLANALP & BRAAKSMA, P.C.
P.O. Box One
Bozeman, MT  59771-0001

Larry Jent
WILLIAMS, JENT & DOCKINS
506 East Babcock
Bozeman,  MT  59715

HON. Joseph P. Mazurek, Attorney General
Cregg W. Coughlin, Assistant
Justice Bldg.
Helena, MT  59715

Mike Salvagni
Gallatin County Attorney
615 South 16th Ave.
Bozeman, MT  59715

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _M. Tudor_
    Deputy