

DA 19-0428

IN THE SUPREME COURT OF THE STATE OF MONTANA

2021 MT 190

STATE OF MONTANA,

    Plaintiff and Appellant,

v.

TYLER EDWARD GIFFIN,

    Defendant and Appellee.

FILED

JUL 27 2021

Bowen Greenwood
Clerk of Supreme Court
State of Montana

APPEAL FROM:     District Court of the Eleventh Judicial District,
In and For the County of Flathead, Cause No. DC-19-176A
Honorable Amy Eddy, Presiding Judge

COUNSEL OF RECORD:

    For Appellant:

        Austin Knudsen, Montana Attorney General, Micheal S. Wellenstein, Tammy K Plubell, Assistant Attorneys General, Helena, Montana

        Travis Ahner, Flathead County Attorney, Ashley Suzanne Frechette, Deputy County Attorney, Kalispell, Montana

    For Appellee:

        Chad Wright, Appellate Defender, Helena, Montana

Submitted on Briefs: June 16, 2021

Decided: July 27, 2021

Filed:

_____
Clerk

Justice Laurie McKinnon delivered the Opinion of the Court.

¶1 The State appeals from an Eleventh Judicial District Court, Flathead County, order granting Tyler Giffin's Motion to Dismiss for lack of probable cause. We reverse.

¶2 We review the following issue on appeal:

> *Did the State establish probable cause in its Information when it charged Giffin with criminal endangerment?*

## FACTUAL AND PROCEDURAL BACKGROUND

¶3 On June 24, 2019, the State moved for leave to file an information charging Giffin with felony criminal endangerment, in violation of § 45-5-207(1), MCA. In the affidavit in support of its motion, the State set forth the following facts:

> On June 22, 2019, [an] officer with the Kalispell Police Department responded to a report of a possible gunshot at the Outlaw Inn on Highway 93, within Flathead County. Officer Smith spoke with Michael Slaughter who stated he heard what sounded like a gunshot and observed a hole in the window of the room below his. Slaughter also reported he heard similar sounds the night before.
>
> Officers observed the blinds of the downstairs unit had a gunshot-like pattern of holes and the glass was broken out of the window. Officers Smith, Bain, and Clackler made contact with David Giffin and TYLER EDWARD GIFFIN at the room. TYLER EDWARD GIFFIN stated that he was the person who fired the gun. David stated that TYLER EDWARD GIFFIN is a drug user and was hallucinating when he fired a shotgun at the window. David also stated the night before TYLER EDWARD GIFFIN fired a revolver into a wall. Another person in the unit also stated TYLER EDWARD GIFFIN was hallucinating.
>
> Officer Smith noted the rounds exited the window towards the parking area and into an unoccupied unit of the building. The parking area outside the window is commonly used by the occupants of the Outlaw Inn.

2

¶4 The District Court granted the State's Motion for Leave to File an Information. On June 24, 2019, the State filed its Information charging Giffin with felony criminal endangerment under § 45-5-207(1), MCA.

¶5 On July 9, 2019, Giffin filed a motion to dismiss the criminal endangerment charge, arguing that there were no facts establishing probable cause that he had committed the offense of criminal endangerment. Specifically, Giffin argued: "Nowhere in the affidavit does it allege that there were people in the parking lot at the time of the offense. No specific victim is alleged in the charging documents." He argued that "[n]one of the facts set forth in the charging documents conclude that another was actually subjected to a substantial risk of death or serious bodily injury by the alleged acts of the Defendant." On July 10, 2019, before the State could file a response, the District Court issued an order granting the Motion to Dismiss and did not provide any reasons for its decision.

¶6 The State appeals.

## STANDARD OF REVIEW

¶7 Initially, we must resolve what standard of review to apply. The State provides that a district court's decision to grant a motion to dismiss in a criminal case is a question of law that this Court reviews de novo, citing *State v. White Bear*, 2005 MT 7, ¶ 5, 325 Mont. 337, 106 P.3d 516. Giffin argues that because this case involves a question of whether the State established probable cause in the charging documents, this Court should review the District Court's decision for an abuse of discretion, citing *State v. Holt*, 2006 MT 151, ¶ 20, 332 Mont. 426, 139 P.3d 819.

3

¶8 We have consistently stated the standard of review with respect to motions to dismiss as follows: a trial court's grant or denial of a motion to dismiss in a criminal case is a question of law that we review de novo. *State v. Violette*, 2009 MT 19, ¶ 10, 349 Mont. 81, 201 P.3d 804 (motion to dismiss on speedy trial grounds); *State v. Mallak*, 2005 MT 49, ¶ 13, 326 Mont. 165, 109 P.3d 209 (motion to dismiss on double jeopardy grounds); *State v. Adgerson*, 2003 MT 284, ¶ 24, 318 Mont. 22, 78 P.3d 850 (motion to dismiss based on the assertion that Montana's stalking statute was overbroad); *State v. Knowles*, 2010 MT 186, ¶ 23, 357 Mont. 272, 239 P.3d 129 (motion to dismiss based on vindictive prosecution). However, we have also generally deferred to a district court's discretion when the district court has reviewed an information and affidavit and found the charging documents established probable cause that a particular person committed a particular offense. *State v. Dunfee*, 2005 MT 147, ¶ 31, 327 Mont. 335, 114 P.3d 217 ("The determination of whether a motion to file an information is supported by probable cause is left to the sound discretion of the trial court."). The official comments to Montana's leave to file information statute, § 46-11-201, MCA, suggest such review ("Obtaining leave to file an information is not a mere perfunctory matter, but rests in the sound discretion of the district judge.").

¶9 Though the precise question of what standard of review should be applied was not directly before the Court in *Holt*, Justice Nelson's concurrence discussed the issue at length. He identified the inconsistencies between an abuse of discretion standard when reviewing probable cause, and a de novo standard when reviewing a motion to dismiss. He

4

noted that the standard used seemed to depend largely on whether the alleged insufficiency in the affidavit was grounded in an underlying *question of law* or was based on an alleged failure to set forth *sufficient factual data* to support the charge. *Holt*, ¶ 56 (Nelson, J., concurring). Even this distinction, however, has not clarified what standard of review the Court should apply. We have applied de novo review in cases involving questions of both factual and legal sufficiency,[1] as well as in cases involving only a question of legal sufficiency.[2] We have applied abuse of discretion review in cases involving only questions of factual sufficiency,[3] in cases involving questions of both factual and legal sufficiency,[4] and in cases involving only questions of legal sufficiency.[5]

¶10   It is often difficult to categorize the question for establishing probable cause as being purely one of factual sufficiency or of legal sufficiency. Every case contains both a factual component and a legal component. Each case involves a set of unique facts and, as a matter of law, the "recitation of some minimum quantum of those facts in the affidavit supporting

---

[1] *E.g.*, *State v. Thompson*, 243 Mont. 28, 33, 792 P.2d 1103, 1107 (1990); *State v. Smith*, 2004 MT 191, ¶ 12, 322 Mont. 206, 95 P.3d 137.

[2] *E.g.*, *State v. Matthews*, 183 Mont. 405, 600 P.2d 188 (1979); *State v. Villanueva*, 2005 MT 192, ¶ 9, 328 Mont. 135, 118 P.3d 179.

[3] *E.g.*, *State v. Riley*, 199 Mont. 413, 423, 649 P.2d 1273, 1278 (1982); *State v. Buckingham*, 240 Mont. 252, 255-56, 783 P.2d 1331, 1334 (1989); *State v. Ramstead*, 243 Mont. 162, 166, 793 P.2d 802, 804 (1990); *State v. Arrington*, 260 Mont. 1, 6-8, 858 P.2d 343, 346-47 (1993); *Dunfee*, ¶ 31.

[4] *E.g.*, *State v. Bradford*, 210 Mont. 130, 139, 683 P.2d 924, 929 (1984); *State v. Elliott*, 2002 MT 26, ¶ 27, 308 Mont. 227, 43 P.3d 279.

[5] *E.g.*, *State v. Fehringer*, 2013 MT 10, ¶ 22, 368 Mont. 226, 293 P.3d 853; *City of Bozeman v. Lehrer*, 2020 MT 55, ¶ 7, 399 Mont. 166, 459 P.3d 850.

the motion for leave to file information" is necessary to establish the probability that the accused committed the crime or crimes to be charged. *Holt*, ¶ 66 (Nelson, J., concurring) (citing *State v. Arrington*, 260 Mont. 1, 6-7, 858 P.2d 343, 346 (1993); *State v. Elliott*, 2002 MT 26, ¶ 26, 308 Mont. 227, 43 P.3d 279). "It is simply impossible to determine whether probable cause has been established in either a factual or legal vacuum." *Holt*, ¶ 67 (Nelson, J., concurring). It is thus clear that categorizing these cases simply as questions of either factual sufficiency or legal sufficiency does little to inform us on the appropriate standard of review.

¶11 The determination is a mixed question of law and fact. "We have, with minor exceptions not important here, applied the de novo standard in criminal cases where we consider mixed questions of law and fact . . . ." *Holt*, ¶ 67 (Nelson, J., concurring); *see State v. Grixti*, 2005 MT 296, ¶ 15, 329 Mont. 330, 124 P.3d 177 (ineffective assistance of counsel); *State v. Favi*, 2005 MT 288, ¶ 10, 329 Mont. 273, 124 P.3d 164 (voluntariness of plea); *Stop Over Spending Mont. v. State*, 2006 MT 178, ¶ 10, 333 Mont. 42, 139 P.3d 788 (issues surrounding ballot statements approved by the Attorney General). "Mixed questions of law and fact are presented to this Court when the historical facts of a case are admitted or established, the applicable law is undisputed, and the issue is whether the facts satisfy the statutory standard." *Stop Over Spending Mont.*, ¶ 10 (citing *State v. Warclub*, 2005 MT 149, ¶ 21, 327 Mont. 352, 114 P.3d 254 (citing *Lambert v. Blodgett*, 393 F.3d 943, 965 (9th Cir. 2004) (citing *Pullman-Standard v. Swint*, 456 U.S. 273, 289 n. 19, 102 S. Ct. 1781, 1790 (1982)))). When parties raise the issue of the sufficiency

6

of the evidence to establish probable cause, the issue is whether the alleged facts satisfy the statutory elements of the crime charged; that is, whether there is probable cause that the accused had committed the offense of criminal endangerment. Thus, parties are presenting a mixed question of fact and law. Accordingly, where the question is whether the affidavit in support of a motion for leave to file an information directly in the district court is legally or factually sufficient, it is a mixed question of law and fact that we will review de novo. A de novo standard of review addresses both the factual and legal components in a motion to dismiss an information for lack of probable cause.

## DISCUSSION

¶12 *Did the State establish probable cause in its Information when it charged Giffin with criminal endangerment?*

¶13 On appeal, the State argues the District Court erred in granting Giffin's motion to dismiss. It maintains the District Court's grant of Giffin's motion to dismiss was based on Giffin's argument that the State failed to identify a specific victim in the charging documents—an identification of which, the State asserts, is not a requirement when charging a defendant with criminal endangerment. Giffin argues this is a misrepresentation of the dismissal and maintains, rather, that the State failed to establish probable cause because the Information was devoid of details showing Giffin knowingly created a risk of death or serious bodily injury to another. On appeal, Giffin concedes that the offense of criminal endangerment does not require identification of a specific victim but argues it

7

does require that Giffin had to knowingly create a specific identifiable risk of harm to another.

¶14    The statutory requirements governing the filing of an information and the supporting affidavit are set forth in § 46-11-201, MCA, which provides:

> (1) The prosecutor may apply directly to the district court for permission to file an information against a named defendant . . . .

> (2) An application must be by affidavit supported by evidence that the judge . . . may require. If it appears that there is probable cause to believe that an offense has been committed by the defendant, the judge . . . shall grant leave to file the information, otherwise the application is denied.

¶15    "The sufficiency of charging documents is established by reading the information together with the affidavit in support of the motion for leave to file the information." *Elliott*, ¶ 26. "[E]vidence to establish probable cause need not be as complete as the evidence necessary to establish guilt." *Arrington*, 260 Mont. at 6, 858 P.2d at 346 (quoting *State v. Bradford*, 210 Mont. 130, 139, 683 P.2d 924, 929 (1984)). The supporting affidavit does not have to make out a prima facie case that the defendant committed an offense; rather, a probability that the defendant committed the offense is sufficient. *Elliott*, ¶ 26. Nonetheless, the information must reasonably apprise the accused of the charges against him to enable him the opportunity to prepare a defense. *State v. Wilson*, 2007 MT 327, ¶ 25, 340 Mont. 191, 172 P.3d 1264. We apply the "common understanding" rule to determine if the charging language of a document allows a person to understand the charges against him. *Wilson*, ¶ 25 (citing *State v. Brogan*, 261 Mont. 79, 86, 862 P.2d 19, 23 (1993)). "Under this standard, the test of the sufficiency of a charging document is

8

whether the defendant is apprised of the charges and whether he will be surprised." *Wilson*, ¶ 25 (citing *Brogan*, 261 Mont. at 86, 862 P.2d at 23) (internal quotation marks omitted).

¶16 Section 45-5-207(1), MCA, defines the offense of criminal endangerment. It provides in pertinent part, "A person who knowingly engages in conduct that creates a substantial risk of death or serious bodily injury to another commits the offense of criminal endangerment."

¶17 We turn first to the issue of whether a specific victim need be identified to charge a defendant with criminal endangerment. Though neither party is challenging our holding in *State v. Bell*, 277 Mont. 482, 489, 923 P.2d 524, 528 (1996), that "no specific victim need be identified *to find a defendant guilty* of criminal endangerment" (emphasis added); here, the issue is whether a specific victim must be identified to *charge* a defendant with criminal endangerment. As we have held that identification of a specific victim is not an element of criminal endangerment before a case may be submitted to a jury, *Bell*, 277 Mont. at 489, 923 P.2d at 528, it cannot be a requirement under the lesser standard required to withstand a motion to dismiss an information. Accordingly, the State was not required to identify a specific victim in its charging documents.

¶18 Giffin argues the issue lies not in the State's failure to identify a specific victim; rather, Giffin argues the State's "complete lack of basic evidence showing his knowledge about the substantial risk of death or serious bodily injury" to another is insufficient as a charging document. Giffin argues that because the statute requires a defendant *knowingly* engages in conduct that creates a substantial risk of death or serious bodily injury to

9

another, probable cause would depend on facts Giffin knew, or should have known, that where he was shooting could cause the substantial risk of death or serious bodily injury. Giffin relies on *State v. Lambert*, 280 Mont. 231, 929 P.2d 846 (1996). In *Lambert*, we defined "knowingly" as it applies to the offense of criminal endangerment. We further analyzed and clarified the mental state required for criminal endangerment in *State v. Fleming*, 2019 MT 237, 397 Mont. 345, 449 P.3d 1234. In *Lambert*, we explained that "the criminal endangerment statute emphasizes result over conduct and that more is required of the accused's mental state than that he be aware only that his conduct is incorrect." *Fleming*, ¶ 26; *see Lambert*, 280 Mont. at 236, 929 P.2d at 849. Rather, it is the "appreciation of the probable risks to others posed by one's conduct that creates culpability for criminal endangerment . . . ." *Lambert*, 280 Mont. at 236, 929 P.2d at 849. Thus, we held that "the mental state 'knowingly' applies, without apparent distinction, to the elements (1) engage in conduct (2) that creates a substantial risk of death or serious bodily harm to another." *Lambert*, 280 Mont. at 237, 929 P.2d at 850. Knowingly, therefore, applies to both the conduct and to the result of that conduct.

¶19 Here, the parties do not dispute that Giffin knowingly engaged in the conduct of firing a shotgun—indeed, Giffin admitted as much to the responding officers. Giffin, however, argues that by itself, firing a gun indoors cannot form the basis of a criminal endangerment charge. He maintains that the discharge must be accompanied by knowledge of the high probability that the discharge would create a substantial risk of death or serious bodily injury. This is true, but the "evidence necessary to establish probable cause need

10

not be as complete as the evidence necessary to establish guilt." *Arrington*, 260 Mont. at 6, 858 P.2d at 346 (quoting *Bradford*, 120 Mont. at 139, 683 P.2d at 929).

¶20 Here, the State only had to establish a probability that Giffin committed the offense of criminal endangerment. Firing a gun through a hotel window into a parking lot that is "commonly used" by the hotel's patrons clearly could endanger a person in the parking lot. The State sufficiently alleged facts that Giffin "knowingly" engaged in conduct and the conduct created a substantial risk of death or serious bodily injury. The State's affidavit established that Giffin was hallucinating on drugs in a hotel room when, in the presence of two other occupants of the room, he fired his shotgun through the hotel room window, which faced the hotel parking lot commonly used by guests. Officers observed that the blinds to the window had a shotgun-like pattern of holes, and the glass was broken out of the window. Though we pass no judgment on the merits of this case, the facts alleged are sufficient to show for purposes of the charging documents that Giffin knew of the high probability firing a gun into the hotel's parking lot would create a substantial risk of death or serious bodily injury to another.

¶21 We recognize that the Information and supporting affidavit in this case could have included more detail. However, here, the charging documents met the minimum requirements. As a matter of law, they apprised the defendant of the offense charged and the alleged facts in support of the offense were sufficient to enable him the opportunity to prepare a defense. *Wilson*, ¶ 25. Though Giffin contends that to establish probable cause the State needed to provide the specific time that Giffin discharged the shotgun, the

11

direction the broken window faced, the type of shotgun Giffin shot, the shotgun shell he used, and whether or not the parking lot was in use when the shotgun discharged, these facts are not required to withstand a motion to dismiss his criminal endangerment charge. These challenges and arguments would more appropriately be raised at trial.

## CONCLUSION

¶22 We conclude, under a de novo standard of review, that the State alleged sufficient facts in support of its charge of criminal endangerment to withstand a motion to dismiss.

¶23 Reversed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

12